EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Departamento de Hacienda Secretario, Manuel Díaz Saldaña<br>Peticionario<br><br>v.<br><br>Telefónica Larga Distancia de Puerto Rico, Inc., AT&T de Puerto Rico, Inc., y Sprint Communications Company, L.P.<br>Recurridos | Certiorari<br><br>2005 TSPR 32<br><br>163 DPR \_\_\_\_ |

Número del Caso: CC-2001-223

Fecha: 17 de marzo de 2005

Tribunal de Apelaciones:

        Circuito Regional I de San Juan, Panel IV

Juez Ponente:

        Hon. Carlos Rodríguez Muñiz

Abogados de la Parte Recurrida:

        Lcdo. Fernando J. Gierbolini
        Lcdo. Fernando Goyco-Covas
        Lcdo. Miguel J. Rodríguez Marxuach
        Lcda. Hilda M. Surillo Peña

Oficina del Procurador General:

        Lcda. Leticia Casalduc Rabell
        Procuradora General Auxiliar

Materia: Contribuciones

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Hacienda
Secretario, Manuel Díaz Saldaña
   Peticionario

         v.

                              CC-2001-223      Certiorari

Telefónica Larga Distancia de
Puerto Rico, Inc., AT&T de Puerto
Rico, Inc., y Sprint Communications
Company, L.P.
   Recurridos


Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río


San Juan, Puerto Rico, a 17 de marzo de 2005.

I

El 15 de mayo de 1945, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 301. Dicha ley se promulgó con el propósito de proveer fondos para el desarrollo de un sistema unificado de telecomunicaciones y, entre otros, imponer y cobrar una contribución o impuesto de dos por ciento (2%) sobre el ingreso bruto de operación cobrado por cualquier compañía de servicio público o instrumentalidad gubernamental de Puerto Rico, por la transmisión de mensajes telefónicos y telegráficos, incluyendo giros telegráficos.[1]

---

[1] Véase, Ley Núm. 301 del 15 de mayo de 1945, sección 2, 27 L.P.R.A. sec. 342.

Posteriormente, se aprobó la Ley Núm. 64 del 23 de agosto de 1990, con el propósito, entre otros, de enmendar la Sección 2 de la Ley Núm. 301. Esto, a los fines de imponer y autorizar al Secretario de Hacienda de Puerto Rico a cobrar una contribución o impuesto de dos por ciento (2%) sobre el ingreso bruto de operación en la prestación de servicios de telecomunicaciones por cualquier compañía dedicada a tales fines que no estuviera cubierta por la Ley de la Comisión Reguladora de Telecomunicaciones.[2]

Algún tiempo después se aprobó la Ley Núm. 69 del 9 de agosto de 1993. Ésta fue aprobada "[p]ara enmendar la Sección 2 de la Ley Núm. 301 de 15 de mayo de 1945, según enmendada, a fin de mantener la imposición y autorización del Secretario de Hacienda a cobrar las contribuciones [impuesto de dos por ciento (2%)] a las compañías de telecomunicaciones de larga distancia".[3]

Así las cosas, el 12 de septiembre de 1996 se aprobó la Ley para la creación de la Junta Reglamentadora de Telecomunicaciones, Ley Núm. 213 de igual fecha.[4] Ésta se aprobó con el propósito de:

---

[2] Entiéndase, compañías dedicadas a prestar servicios de telecomunicaciones interestatales e internacionales, es decir, fuera de Puerto Rico. Ley de la Comisión Reguladora de Telecomunicaciones, Ley 63 de 23 de agosto de 1990, 27 L.P.R.A sec. 442.

[3] Ley de Compañías de Telecomunicaciones- Contribución sobre el Ingreso Bruto; Enmienda. Ley 69 del 9 de agosto de 1993, 27 L.P.R.A. sec. 342.

[4] 27 L.P.R.A. secs. 265-272.

crear la Junta Reglamentadora de Telecomunicaciones de Puerto Rico, establecer sus poderes y prerrogativas y proveer para su organización; **para derogar la Ley Núm. 64 de 23 de agosto de 1990, según enmendada,** y establecer la política pública del Gobierno de Puerto Rico en relación con las telecomunicaciones; y para otros fines. (Énfasis Suplido)

A su vez, añade el Capítulo IV, Artículo 5 de la citada ley:

Derogación- Se deroga la Ley Núm. 64 de 23 de agosto de 1990, según enmendada [...].

A raíz de la aprobación de la Ley Núm. 213, Telefónica Larga Distancia de Puerto Rico Inc. (en adelante, "TLD"), AT&T de Puerto Rico Inc. (en adelante "AT&T") y Sprint Communications Company, L.P. (en adelante "Sprint"), (en conjunto, en adelante, "las compañías"), entidades dedicadas a proveer servicios de telecomunicaciones de larga distancia, remitieron misivas al Secretario de Hacienda exponiendo que, a su entender, la contribución de 2% impuesta a las compañías de larga distancia había sido derogada mediante la aprobación de la referida ley. Consecuentemente, arguyeron que a partir del 12 de septiembre de 1996 no eran responsables del pago de ésta. No obstante, el Secretario de Hacienda (en adelante "Hacienda") ripostó, informando a las compañías que la contribución seguía en vigor ya que, alegadamente, la

aprobación de dicha ley no había tenido el efecto de abolirla.[5]

Las compañías presentaron oportuna solicitud de reconsideración la cual Hacienda denegó. En consecuencia, el 2 de julio de 1997, presentaron una demanda en contra de Hacienda. Solicitaron al Tribunal de Primera Instancia (en adelante "TPI") que resolviera que la contribución en cuestión había sido derogada por la Ley Núm. 213.[6]

Poco después, las compañías sometieron las planillas y cheques correspondientes al pago de contribuciones para el año 1996.[7] Sin embargo, resaltaron que efectuaban el pago de la contribución atribuible a sus ingresos generados durante el período comenzado el 13 de septiembre de 1996 y terminado el 31 de diciembre de 1996[8] bajo protesta, dado su entendimiento del efecto revocatorio que había tenido

_____

[5] Apéndice del recurso de *certiorari*, pág. 56.

[6] La demanda se presentó al amparo de las disposiciones de la Ley 170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.* Ésta provee que las órdenes o resoluciones dictadas por el Secretario de Hacienda con relación a las leyes de rentas internas del Estado Libre Asociado de Puerto Rico se revisarán mediante juicio *de novo.*

[7] Sprint sometió su planilla y cheque mediante carta fechada el 9 de julio de 1997, mientras que TLD y AT&T sometieron conjuntamente sus planillas mediante carta del 11 de julio de 1997.

[8] Entiéndase, el período comprendido entre la fecha en que fue aprobada y entró en vigor la ley Núm. 213, y la fecha en que finalizó el año contributivo en cuestión.

la Ley 213 sobre el referido impuesto.[9]

Sucesivamente, el 23 de septiembre de 1997, las compañías presentaron una segunda demanda en contra de Hacienda. Solicitaron al TPI que ordenara al Secretario de Hacienda a devolverles las sumas pagadas bajo protesta.[10] A instancias de Hacienda, el TPI consolidó ambas causas de acción.

Posteriormente, las compañías presentaron sendas demandas impugnando la constitucionalidad de la contribución impuesta por la Ley Núm. 69, alegando que ésta violaba la cláusula de comercio durmiente de la Constitución de Estados Unidos.[11] A solicitud de las partes,

---

[9] Por tanto, a través de las referidas comunicaciones, Sprint reclamó que le reintegraran la cantidad de $135,033.00, mientras que TLD reclamó un reintegro de $373,775.62 y AT&T reclamó un reintegro de $521,179.63.

[10] Esta segunda demanda se radicó bajo las disposiciones de la Ley Núm. 232 del 10 de mayo de 1949, según enmendada, 13 L.P.R.A sec. 261. Esta última autoriza al contribuyente que creyere que ha pagado o que le ha sido cobrada ilegal o indebidamente, o en exceso de la cantidad debida, una contribución de cualquier clase, a radicar una demanda en la forma prescrita por ley dentro del término de treinta (30) días a partir del depósito en el correo de la notificación del Secretario de Hacienda denegando la solicitud de reintegro de la misma.

[11] Adujeron que la referida ley imponía una contribución sobre el ingreso bruto de operación en la prestación de servicios de telecomunicaciones a cualquier compañía de larga distancia, mas no imponía una contribución similar al ingreso bruto derivado de la prestación de servicios de telecomunicaciones intraestatales a las compañías que prestaban dichos servicios. Consecuentemente, solicitaron el reintegro de las cantidades pagadas para los años contributivos 1994, 1995 y en cuanto al 1996, el período comprendido entre el 1 de enero y el 11 de septiembre de 1996.

el TPI consolidó estos casos con los previamente consolidados.

Tras varios incidentes procesales, el 23 de septiembre de 1999, Hacienda presentó ante el TPI un escrito titulado "Moción de Sentencia Sumaria o Desestimación". Mediante éste, solicitó que se dictaminara que la Ley Núm. 213 no había derogado la controvertida contribución[12] y que la Ley Núm. 69 era constitucional. Oportunamente, TLD y Sprint presentaron un escrito de "Oposición a Moción de Sentencia Sumaria o Desestimación y Solicitud de Sentencia Sumaria Parcial" en el cual reprodujeron sus argumentos en torno a que la contribución había quedado derogada por la Ley Núm. 213. AT&T hizo lo propio mediante un escrito presentado separadamente. Tras la presentación de una Réplica por parte de Hacienda y una Dúplica por parte de Sprint y TLD, el TPI procedió a resolver.

El TPI entendió que, como la Ley Núm. 69 había enmendado la Ley Núm. 64, sosteniendo la imposición de la contribución, y la Ley Núm. 213 derogó la Ley Núm. 64, según enmendada, por consiguiente, la Ley Núm. 213 tuvo el efecto de derogar la contribución. En vista de lo cual, no existiendo controversia sobre los hechos que suscitaron el

---

[12] Bajo el argumento de que la Ley Núm. 213 sólo derogó expresamente la Ley Núm. 64, según enmendada, lo que no incluyó la derogación de la sección 2 de la Ley Núm. 301, según ésta había sido enmendada por la Ley Núm. 69; y que la exposición de motivos de la Ley Núm. 69 enunciaba la intención de la Legislatura de mantener el cobro de la contribución.

pleito, dictó sentencia sumaria parcial a favor de las compañías.[13] En consecuencia, ordenó a Hacienda el reembolso de las sumas pagadas bajo protesta por las compañías.[14]

Inconforme, Hacienda recurrió ante el entonces Tribunal de Circuito de Apelaciones, hoy Tribunal de Apelaciones (en adelante, "TA"). Mediante sentencia del 24 de enero de 2001, el TA confirmó el dictamen recurrido.

Insatisfecho con dicha determinación, Hacienda acude ante nos vía recurso de *certiorari* y formula los siguientes señalamientos de error:

1. Erró el Honorable [sic] Tribunal de Circuito de Apelaciones al determinar que el Artículo 5 del Capítulo IV de la Ley de Telecomunicaciones de 1996, Ley Núm. 213 de 12 de septiembre de 1996, derogó la contribución de 2% impuesta a las compañías de telecomunicaciones de

---

[13] Quedó pendiente ante el TPI la controversia sobre la constitucionalidad de la Ley Núm. 69, entiéndase, si la contribución impuesta por ésta discriminaba o imponía cargas indebidas al comercio interestatal en violación a la cláusula de comercio durmiente de la Constitución de Estados Unidos. El 19 de octubre de 2001, el TPI emitió Sentencia declarando "no ha lugar" a la petición para que se decretara la inconstitucionalidad de la referida ley. TLD, Sprint y AT&T presentaron sendos recursos de apelación ante el TA. Tras consolidar los recursos, el 26 de noviembre de 2002, el TA dictó Sentencia confirmando el dictamen recurrido. En consecuencia, TLD y Sprint presentaron recursos de *certiorari* ante este Tribunal (casos CC-2002-99 y CC-2002-108, respectivamente). AT&T no ha presentado recurso alguno. Mediante Resolución del 8 de marzo de 2002, a los fines de evaluar los recursos presentados, concedimos sesenta (60) días al Procurador General para que se exprese en torno a dichos recursos de *certiorari.* El Procurador General compareció el 9 de agosto de 2002. El Tribunal no ha decidido aún si expide o nó dichos recursos.

[14] Véase, Sentencia Sumaria Parcial dictada por el TPI el 3 de julio de 2000, Apéndice del recurso de *certiorari*, pág. 340.

larga distancia a tenor con [sic] la Ley Núm. 301 de 15 de mayo de 1945, según enmendada.

2. Erró el Honorable [sic] Tribunal de Circuito de Apelaciones al determinar que la derogación de una ley enmendatoria – la ley 64 de 1990 – derogó además la ley primaria enmendada por ésta – la ley 301 de 1945 – a pesar [de] que a la fecha de la alegada derogación existía una ley enmendatoria posterior – la Ley 69 de 1993 – que atendía el asunto que se pretendía derogar mediante la referencia a la primera ley enmendatoria – la Ley 64 de 1990.

3. Erró el Honorable [sic] Tribunal de Circuito de Apelaciones al determinar que una segunda ley enmendatoria – la Ley 69 de 1990 – puede tener efecto sobre una previa ley enmendatoria – la Ley 64 de 1990 – y no sobre la ley primaria – Ley 301 de 1945 – según ésta fue enmendada por la primera ley enmendatoria.

4. Erró el Honorable [sic] Tribunal de Circuito de Apelaciones al dar una interpretación ilógica a la Ley de Telecomunicaciones de 1996, Ley Núm. 213 de 12 de septiembre de 1996.

Mediante resolución de 20 de abril de 2001 expedimos el auto de *certiorari*. Contando con la comparecencia de las partes, resolvemos.

II

Por estar íntimamente relacionados entre sí los errores señalados, los discutiremos en conjunto.

Nos encontramos, una vez más, ante una controversia respecto a la interpretación de estatutos relacionados. Son las normas aplicables a la paráfrasis y al efecto de la derogación de una ley las que pautan la discusión en el

recurso de autos.

La cuestión a adjudicarse se refiere primordialmente a si la Ley Núm. 213 del 12 de septiembre de 1996 revocó la imposición de la contribución de dos por ciento (2%) existente sobre los ingresos derivados por las compañías de telecomunicaciones de larga distancia en la prestación de tales servicios.

En nuestro ministerio de interpretar las leyes, nos regimos por unas normas de hermenéutica que delimitan nuestra función. Debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobar una ley. Cuando interpretamos una disposición específica, nuestra interpretación siempre debe asegurar el resultado que originalmente se quiso obtener. Es decir, al interpretar y aplicar un estatuto hay que hacerlo teniendo presente el propósito social que lo inspiró. *Piñero González v. A.A.A.,* res. el 23 de octubre de 1998, 146 D.P.R.___, 98 TSPR 141, 98 JTS 140; *Colegio de Ópticos de P.R. v. Pearle Vision Center*, 142 D.P.R. 221 (1997). A la luz de lo anterior, es nuestra obligación armonizar, hasta donde sea posible, todas las disposiciones de ley envueltas en el caso con miras a lograr un resultado sensato, lógico y razonable que represente y salvaguarde la efectividad de la intención legislativa.

A toda ley le debemos dar la interpretación que mejor responda a los propósitos que persigue. Debemos interpretar la ley como un ente armónico, dándole sentido lógico a sus

diferentes secciones, supliendo las posibles deficiencias cuando esto fuera necesario. *Farmacias Moscoso, Inc. v. K-Mart Corp*., 138 D.P.R. 497 (1995); *Gobernador v. Alcalde de Coamo*, 131 D.P.R. 614 (1992); *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992). A su vez, "[l]os artículos de una ley deberán interpretarse los unos por los otros, atribuyendo a los dudosos el sentido que resulte del conjunto de todos". J. M. Manresa, *Comentarios al Código Civil Español*, 5ta ed., Madrid, Ed. Reus, 1924, T. I, pág. 78. Teniendo en cuenta, sin embargo, que "[a]nte un lenguaje claro e inequívoco del legislador, el texto de la ley es la expresión por excelencia de la intención legislativa". *Pérez Pérez v. Gobierno Municipal de Lares*, res. el 27 de noviembre de 2001, 155 D.P.R.___, 2001 TSPR 160, 2001 JTS 163, pág. 444; *Díaz v. Secretario de Hacienda*, 114 D.P.R. 865, 871 (1983).

Teniendo esto en mente, pasemos a evaluar las disposiciones legales que dieron paso a la presente controversia.

La Ley Núm. 301 de 15 de mayo de 1945, *supra*, fue aprobada con el propósito de proveer fondos para el desarrollo de un sistema unificado de telecomunicaciones mediante la extensión del sistema telegráfico insular y la operación de un sistema telefónico a larga distancia entre San Juan y Ponce y, entre otras cosas, imponer y disponer del producto de una contribución o impuesto sobre mensajes

telefónicos y telegráficos.[15] A esos efectos, la sección 2 de la referida ley impuso una contribución de dos por ciento (2%) sobre el ingreso bruto de operación cobrado por cualquier compañía de servicio público por la transmisión de mensajes telefónicos y telegráficos. Los fondos generados serían depositados en un fondo especial denominado Fondo para el Fomento de Comunicaciones, y serían puestos, de tiempo en tiempo, a la disposición de la Junta de Directores de la Autoridad de Comunicaciones de Puerto Rico.

Posteriormente, la referida sección 2 de la Ley Núm. 301 fue objeto de enmiendas leves en los años 1966 y 1972[16] y de subsiguientes enmiendas en los años 1990 y 1993.

La enmienda del año 1990 se produjo a raíz de la aprobación de la Ley Núm. 64 de 23 de agosto de 1990, *supra*.[17] Ésta enmendó la sección 2 de la Ley Núm. 301, según enmendada, con el fin de imponer similar contribución a las

---

[15] Sección 1, Ley 301 de 15 de mayo de 1945, *supra*.

[16] La enmienda de 1966 introdujo cambios menores de puntuación, mientras que la enmienda de 1972 añadió la frase "y cualquier recargo, si lo hubiere", en referencia a los fondos, producto del recaudo de la contribución, a ser depositados en el Fondo Especial para el Fomento de Comunicaciones.

[17] Ésta fue promulgada en respuesta a la aprobación de la venta de los activos de la Autoridad de Teléfonos de Puerto Rico mediante la Ley Núm. 5 del 10 de abril de 1990, con el objetivo de establecer la estructura reguladora del mercado para la provisión de dichos servicios por medio de compañías privadas.

compañías de telecomunicaciones no cubiertas por la Ley de la Comisión Reguladora de Telecomunicaciones, *supra*. Además, estableció el plazo para su pago y dispuso que los fondos generados por la imposición de la contribución fuesen depositados en el Fondo Especial de la Comisión Reguladora de Telecomunicaciones.

De otra parte, la enmienda de 1993 se produjo como consecuencia de la aprobación de la Ley Núm. 69 de 9 de agosto de 1993, *supra*.[18] Ésta enmendó la sección 2 de la Ley 301, según enmendada, a los efectos de sostener el cobro de la contribución a las compañías de telecomunicaciones de larga distancia y disponer que los fondos producto de su recaudo fuesen depositados en el Fondo General del Estado Libre Asociado.

Mientras, la Ley Núm. 213 de 12 de septiembre del 1996, cuya aprobación dio inicio al presente pleito, estableció un nuevo marco reglamentario para la industria de telecomunicaciones en Puerto Rico. Entre sus disposiciones, creó la Junta Reglamentadora de Telecomunicaciones, y acordó la derogación de la Ley 64,

---

[18] La enmienda respondió a la necesidad de mantener vigente la imposición de la contribución, ante la disolución de la Comisión Reguladora de Telecomunicaciones dada la frustración de la venta del sistema de telecomunicaciones público. Por tanto, ésta tuvo como propósito, entre otros, disponer sobre el destino de los fondos depositados hasta ese entonces en el Fondo Especial de la disuelta comisión.

*supra*, según enmendada.[19]

El TA, considerando que la contribución impuesta por la sección 2 de la Ley Núm. 301 fue extendida a las compañías no cubiertas por la Comisión Reguladora de Telecomunicaciones a través de la Ley Núm. 64, entendió que

---

[19] La Exposición de Motivos de Motivos de la referida ley Núm. 213 expresa:

> [l]a Asamblea Legislativa, luego de investigar, analizar y determinar las necesidades y los intereses del pueblo de Puerto Rico en lo concerniente al desarrollo del área de las telecomunicaciones, y tomando en consideración las acciones del Gobierno Federal en cuanto a la extensión y aplicabilidad de estos servicios a la comunidad en general mediante la Ley Federal de Comunicaciones, ha determinado que es esencial establecer una Junta que promueva la competencia total, igual y leal, y que facilite y estimule la construcción y desarrollo de facilidades de telecomunicaciones para permitir y asegurar a los ciudadanos de Puerto Rico, mejores y más variados servicios de telecomunicaciones a costos razonables para que estimule y fomente el desarrollo económico para el bienestar general del país.
>
> Las condiciones de mercado a crearse al amparo de esta Ley estimularán y fortalecerán la competitividad de Puerto Rico en las telecomunicaciones, lo cual, a su vez, contribuirá a la creación de más empleos.
>
> La Asamblea Legislativa reconoce que la industria de las telecomunicaciones persigue el fin público de proveer a nuestra población acceso adecuado a servicios de telecomunicaciones, a tarifas y cargos razonables y asequibles.
>
> La Junta ... operará [para] facilitar y estimular la construcción y desarrollo de las facilidades de todas las ramas de las telecomunicaciones en Puerto Rico, promoviendo la competencia justa y efectiva, y detectando y corrigiendo conducta anticompetitiva, a fin de fortalecer esta industria y, por ende, el desarrollo socioeconómico de la ciudadanía en general.

años más tarde, cuando la Ley Núm. 69 enmendó la Ley Núm. 301, según enmendada, la Legislatura tomó en consideración el estado de derecho creado cuando la Ley Núm. 64 enmendó la Ley Núm. 301; y que, de esa forma, la enmienda provista por la Ley Núm. 69 operó sobre la Ley Núm. 301 y por ende, sobre la Ley Núm. 64. Por razón de ello, concluyó que cuando la Ley Núm. 213 derogó la Ley Núm. 64, según enmendada, quedó derogada también la Ley Núm. 69. En consecuencia, dictaminó que actualmente no está en vigor legislación alguna que imponga a las compañías recurridas el pago de la controvertida contribución.[20]

Por los fundamentos que exponemos a continuación, confirmamos el dictamen recurrido.

### III

Dispone el Artículo 5 del Código Civil[21] que las leyes solamente pueden ser derogadas, entera o parcialmente, por otras leyes posteriores. A su vez, la derogación de las leyes puede ser expresa o puede ser implícita. Es expresa cuando se declara especialmente por una ley posterior, y tácita cuando la nueva ley contiene preceptos que son contrarios o irreconciliables con los de la anterior ley.[22] Esto es así dado que la Asamblea Legislativa no puede, salvo ciertas excepciones, restringir o limitar su poder,

---

[20] Véase, Sentencia dictada por el TA el 24 de enero de 2001, Apéndice del recurso de *certiorari*, pág. 2.

[21] 31 L.P.R.A. sec. 5.

[22] Véase Artículo 6 del Código Civil; 31 L.P.R.A. sec. 6.

ni el de futuros legisladores, para aprobar enmiendas o derogar leyes. R. E. Bernier, J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed., San Juan, Ed. Luiggi Abraham, 1987; *Pueblo v. Tribunal de Distrito*, 70 D.P.R. 678 (1949).

Mientras, el asunto de si una ley posterior deroga tácitamente una ley anterior es siempre una cuestión que depende de la voluntad del legislador, a ser ésta determinada por una comparación de ambos textos, en busca de la certeza de que ambos son irreconciliables y no pueden subsistir conjuntamente.[23]

Ante dos disposiciones legales antagónicas debe prevalecer la última voluntad legislativa que es la expuesta en la nueva ley. *Autoridad de los Puertos v. Municipio de San Juan*, 123 D.P.R. 496 (1989); *Pérez Vega v. Tribunal Superior*, 93 D.P.R. 749 (1966). Igualmente, cuando se trata de una enmienda a una parte de la ley dejando inalterada otra parte, ambas deben de interpretarse conjuntamente tratando de armonizarlas. De no ser posible, las disposiciones de la ley enmendatoria deben prevalecer como la última expresión de la voluntad legislativa. *Autoridad de los Puertos v. Municipio de San Juan*, *supra*; *A. J. Tristani v. Municipio*, 76 D.P.R. 758 (1954).

Cuando una ley es derogada, deja de existir. *García Pasalacqua v. Tribunal Electoral*, 105 D.P.R. 49 (1976).

---

[23] Bernier y Cuevas Segarra, *Op Cit*, pag. 423.

También las partes que son enmendadas, pues una enmienda equivale a una derogación de todo lo que sea inconsistente o irreconciliable con lo enmendado. Por tanto, "la enmienda a una ley, hasta cierto punto, tiene el efecto de derogar aquellas disposiciones que sean incompatibles con la ley enmendada". *Pueblo v. Tribunal de Distrito*, *supra*, a la pág. 679. Lo derogado, para efectos futuros, es como si nunca hubiera existido, excepto en cuanto a los procedimientos pasados y terminados. *Puerto Rico Ilustrado v. Buscaglia*, 64 D.P.R. 914 (1945).

Evaluando los preceptos legales en controversia a la luz de lo anterior, debemos colegir que al momento de promulgarse la Ley Núm. 213, la contribución en controversia se mantenía vigente únicamente por virtud de la Ley. Núm. 64, según ésta había sido enmendada por la Ley Núm. 69. Veamos.

En primer lugar, al aprobarse la Ley Núm. 64, con el objetivo de enmendar la sección 2 de la Ley Núm. 301, la misma entró en abierto conflicto con esta última. Las diferencias entre lo dispuesto en la Ley Núm. 64 y lo previamente establecido en la sección 2 de la Ley Núm. 301 las hacía, a todos los efectos, irreconciliables. La sección 2 de la Ley Núm. 301 establecía una contribución a ser pagada por compañías de servicio público o instrumentalidades gubernamentales del Pueblo de Puerto Rico, mientras que la Ley 64 establecía una carga contributiva sobre las compañías de telecomunicaciones no

cubiertas por la Ley de la Comisión Reguladora de Telecomunicaciones de Puerto Rico. A su vez, la sección 2 de la Ley Núm. 301 imponía la contribución sobre el ingreso bruto de operación cobrado por la transmisión de mensajes telefónicos y telegráficos, mientras que la Ley Núm. 64 la imponía sobre el ingreso bruto generado por la prestación de servicios de telecomunicaciones. Finalmente, la sección 2 de la Ley Núm. 301 establecía que los fondos cobrados por la contribución se destinarían al Fondo Especial para el Fomento de Comunicaciones, mientras que la Ley Núm. 64 disponía que dichas sumas pasarían al Fondo Especial de la Comisión Reguladora de las Telecomunicaciones.

Es un principio de interpretación estatutaria que las leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras. *Suc. Álvarez v. Pierluisi*, res. el 11 de febrero de 2000, 150 D.P.R.\_\_, 2000 TSPR 21, 2000 JTS 40; *García v. E.L.A.,* 146 D.P.R. 725 (1998); *Mojica Sandoz v. Bayamon Federal*, 117 D.P.R. 110 (1986). Ciertamente, leyes sobre una misma materia se deben interpretar de manera que se mantenga su vigencia y sólo en los casos en que la ley posterior tuviese preceptos irreconciliables con la ley anterior es que se puede aducir razonablemente que ésta ha sido derogada tácitamente.

Reconocemos la sabiduría ínsita en la norma interpretativa que rechaza, de ordinario, la derogación tácita de las leyes. *Pueblo v. Cortés Rivera*, 142 D.P.R.

305 (1997); Véase además, *López Soba* v. *Fitzgerald*, 130 D.P.R. 46 (1992); *Mc Crillis v. Autoridad Navieras de P.R.*, 123 D.P.R. 113 (1989); *Aponte v. Secretario de Hacienda*, 125 D.P.R. 610 (1990). Sin embargo, la situación reseñada demuestra la naturaleza irreconciliable de la relación entre ambas disposiciones legislativas, lo cual, impidió que el nuevo ordenamiento dispuesto en la Ley Núm. 64 coexistiera con el ordenamiento existente bajo la sección 2 de la Ley Núm. 301. "Cuando los términos de una ley posterior son tan inconsistentes con los de una ley anterior que ambas no pueden subsistir juntas, se entenderá que la posterior ha enmendado implícitamente la anterior, especialmente cuando el resultado de tal interpretación es dar efectividad a la intención legislativa". *Díaz Marín v. Municipio de San Juan*, 117 D.P.R. 334, 344 (1986). Véase además, *Colegio de Ópticos de P.R. v. Pearle Vision Center*, *supra*. No obstante, "[c]omo ocurre con cualquier legislación posterior, en ausencia de una cláusula derogatoria expresa, sólo se considerará derogado del estatuto anterior las secciones que sean irreconciliables o incompatibles con el [estatuto] posterior". *López Soba* v. *Fitzgerald*, *supra*, a la pág. 62. Consecuente con lo anterior, debemos concluir que al promulgarse la Ley Núm. 64, ésta tuvo el efecto de derogar tácitamente la sección 2 de la Ley Núm. 301. Por lo tanto, a partir de su aprobación, el gravamen de la contribución tenía vigencia y surtía efectos en virtud de la Ley Núm. 64, mas no de la

sección 2 de la originaria Ley Núm. 301.

Posteriormente, ante la disolución y desaparición de la Comisión Reguladora de Telecomunicaciones, y por ende, de su denominado Fondo Especial, la Legislatura se vio en la necesidad de disponer sobre el destino de los fondos producto del cobro de la contribución, depositados en éste. Fue mediante la aprobación de la Ley Núm. 69 que la Legislatura respondió a dicho acontecimiento. Enmendando así la ley Núm. 64, a los fines de reafirmar la imposición de la contribución y de alterar el destino de los fondos producto del cobro de ésta, ordenando que éstos fuesen transferidos al Fondo General del Tesoro Estatal, y fuesen utilizados para atender las demandas apremiantes de recursos necesarios dirigidos al bienestar del pueblo.[24] Lo anteriormente reseñado tuvo el efecto de que se reafirmara la existencia del gravamen contributivo según lo dispuesto en la Ley Núm. 64, sujeto a la enmienda introducida por la Ley 69 sobre el destino de los fondos producto de su recaudo.

No obstante, Hacienda sugiere en su recurso ante nos que la Ley Núm. 69 no enmendó la Ley Núm. 64 toda vez que la Ley Núm. 69 sólo hacía referencia a la Ley Núm. 301, y nunca se identificó como una enmienda a la Ley Núm. 64.[25] No

---

[24] Véase, Ley 69 de 9 agosto de 1993. *supra.*

[25] Petición de *certiorari*, a la pág. 19.

tiene razón.[26] Nótese, que la introducción de la Ley Núm. 69 expresaba que la misma se aprobó "para enmendar la sección 2 de la Ley Núm. 301, <u>según enmendada</u>"[27]. No cabe duda que, siendo la Ley Núm. 64 una enmienda a la referida sección, el efecto de la Ley Núm. 69 sería sobre el estado de derecho imperante en ese momento, entiéndase, el dispuesto en la Ley Núm. 64 a raíz de su enmienda a la susodicha ley. No obstante lo anterior, cabe señalar que aún si una enmienda a una ley no incluye la frase "según enmendada", se debe interpretar que la enmienda incluye todas las leyes que enmendaron la ley original previo a la enmienda en cuestión. *Pueblo v. Miranda*, 79 D.P.R. 710 (1956). Por tanto, no podemos sostener el argumento de Hacienda referente a que la Ley Núm. 69 era una ley independiente que operó únicamente sobre la Ley Núm. 301, mas no pudo haber operado sobre la Ley Núm. 64. Lo anterior nos lleva a colegir que, posterior a su aprobación, la Ley Núm. 64, conforme a las enmiendas introducidas por la Ley Núm. 69,

---

[26] Con el objetivo de justificar la vigencia de la contribución, Hacienda formula una heurística norma de "estricta técnica legislativa" que la hace incurrir en una serie de contradicciones en su alegato; entre éstas, pese a que señala que "la Ley 69, específicamente, enmendó la Ley 301, una ley primaria, y no la Ley 64, la cual era una ley enmendatoria de la Ley 301", posteriormente arguye que "al momento en que la Ley 213 hace referencia a la Ley 64, ésta es, en estricto rigor legislativo, inexistente, porque no tiene existencia propia independientemente de la Ley 301 y porque, además, había quedado tácitamente sin efecto como consecuencia de la Ley enmendatoria, Ley 69". Véase petición de certiorari, pág. 18.

[27] Ley Núm. 69 de 9 de agosto de 1993, *supra*.

era la única que mantenía vigente la obligación de pagar el impuesto.

En vista de lo señalado, es forzoso concluir que cuando la Ley Núm. 213 se aprobó, con el propósito, entre otros, de derogar expresamente la Ley Núm. 64, según enmendada, [28] su aprobación tuvo el efecto de derogar la Ley Núm. 69, y en consecuencia, abolir la contribución.

Sin embargo, Hacienda entiende que, a pesar de lo anterior, de algún modo la Ley Núm. 69 subsistió de forma independiente y, por ende, la contribución originalmente impuesta por la sección 2 de la Ley Núm. 301 sigue en vigor. Aduce que el foro recurrido, al evaluar las disposiciones del Artículo 5 de la Ley Núm. 213 referentes a la derogación de la ley Núm. 64, según enmendada, le confirió un efecto mucho más amplio que el limitado efecto que surge diáfanamente de su lenguaje. Entiende que la derogación dispuesta en dicho artículo se limitó a la Ley Núm. 64 estrictamente y que es un error entender que éste implicó la derogación de la sección 2 de la Ley Núm. 301, y de la Ley Núm. 69, toda vez que el referido artículo no hace mención alguna de estas últimas dos leyes. Diferimos.

Habida cuenta de que las enmiendas hechas por la Ley Núm. 64 tuvieron un efecto derogatorio sobre la sección 2 de la Ley Núm. 301, no hacía falta derogar esta última expresamente al momento de aprobarse la Ley Núm. 213.

---

[28] Artículo 5, Ley 213 de 12 de septiembre de 1996, *supra*.

Considerando, además, que la derogación de una ley derogatoria no restablece la ley previamente derogada,[29] y que de igual modo, ninguna ley o parte de ley revocada por otra ley, queda restablecida en virtud de la revocación de la ley por la que fue abolida de no consignarse expresamente en la nueva ley el restablecimiento de la ley o parte de ley revocada,[30] la derogación de la Ley Núm. 64, según enmendada por la Ley Núm. 69, no pudo tener el efecto de restituir la sección 2 de la Ley Núm. 301.

Igualmente, no era necesario que el legislador hiciera referencia a la Ley Núm. 69 o enumerara todas las enmiendas subsiguientes a la Ley Núm. 64 ya que, el sólo indicar que se derogaba la Ley Núm. 64, según enmendada, demuestra la intención legislativa de incluir la Ley Núm. 69 en el ámbito de la derogación. Véase, *Pueblo v. Miranda*, *supra.*

*A fortiori*, lo anterior se comprueba al evaluar el Artículo 3 del Capítulo IV de la Ley Núm. 213, el cual dispone:

> [i]ncorporación de Leyes por Referencia; Enmiendas– Dondequiera que se haga referencia a cualquier porción de esta Ley o de cualquier otra ley del Estado Libre Asociado de Puerto Rico, la referencia aplicará a todas sus enmiendas y adiciones, anteriores o posteriormente en vigor.

Este lenguaje indica que la intención del legislador

---

[29] Artículo 6 del Código Civil; 31 L.P.R.A. sec.6.

[30] Artículo 43 del Código Político; 2 L.P.R.A. sec. 251.

al derogar la Ley Núm. 64, según enmendada, era derogar toda ley referente a la contribución, incluida, forzosamente, la Ley Núm. 69. No puede argumentarse contra la letra clara de dicho artículo que la Ley Núm. 69 no estuviese comprendida en la materia a ser derogada.

Por último, Hacienda insiste en que la contribución no debe abolirse dado que la Asamblea Legislativa había expresado en la Exposición de Motivos de la Ley Núm. 69 que "[c]onsideraciones imperiosas de orden público requieren que [se continúe] pagando el impuesto requerido por ley".[31]

Reiteradamente hemos resuelto que las leyes hay que interpretarlas y aplicarlas en comunión con el interés social que las inspira. *Pueblo v. Zayas* Rodríguez, 147 D.P.R. 530; *Col. de Ingenieros y Agrimensores de P.R. v. A.A.A.*, 131 D.P.R. 735 (1992). Debemos tomar en consideración que todo acto legislativo persigue un propósito, trata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o bienestar en general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno, entre otros. *Pérez Pérez v. Gobierno Municipal de Lares*, *supra.* Sin embargo, el hecho de que al aprobar la Ley Núm. 69 la Asamblea Legislativa tuviera la intención de mantener en vigor la contribución, no implica que dicha intención se mantuviera inmutable con

---

[31] Exposición de Motivos, Ley Núm. 69 de 9 de agosto de 1993, *supra.*

el paso del tiempo ante la insoslayable realidad de una sociedad cambiante. Al respecto, señalamos en *Pueblo v. Zayas Rodríguez*, *supra*, a la pág. 551:

> El sentido de hoy no es siempre el sentido del mañana...los jueces no podemos estar ajenos a las transformaciones sociales, científicas y jurídicas. La ley vive y se desarrolla en ambientes que cambian y evolucionan,...[Las leyes] hay que interpretarlas a la luz de las realidades específicas de la sociedad en que operan.

Somos del criterio que la aprobación en 1996 de la Ley Núm. 213 demuestra el deseo y la intención del legislador de eliminar toda legislación que sostuviera la imposición del gravamen contributivo. La intención legislativa esbozada en la Ley Núm. 69 no puede prevalecer sobre la letra clara e indubitable de la ulterior Ley Núm. 213.[32] Reiteramos nuestros pronunciamientos de que "[c]uando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa." *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538, 545 (1996). Véase además, *Ojeda Ojeda v. El* Vocero, 135 D.P.R. 296 (1994); Pérez *Pérez v. Gobierno Municipal de Lares*, *supra*; *Díaz v. Secretario de*

---

[32] Apunta el Artículo 14 del Código Civil, 31 L.P.R.A. sec. 14, que "[c]uando la letra de la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".

*Hacienda*, *supra*. A su vez, cuando una ley es clara y no es ambigua no hay necesidad de mirar más allá de la letra en búsqueda de la intención legislativa. *Rosario Toledo v. Distribuidora Kikuet*, res. el 29 de junio de 2000, 151 D.P.R.___, 2000 TSPR 107 ,2000 JTS 118. En vista de lo anterior, entendemos que en la controversia de autos debe prevalecer la última expresión de la voluntad legislativa que es la expuesta en la nueva ley Núm. 213. Véase, *Del Toro v. Tribunal de Contribuciones*, 65 D.P.R. 63 (1945); *Pérez Vega v. Tribunal Superior*, *supra*. El lenguaje citado en la Ley Núm. 213 es claro e inequívoco y no cabe darle ningún otro significado. Hacerlo en este caso, a fin de exceptuar la Ley Núm. 69 como sobreviviente a la Ley Núm. 213, implicaría la sustitución del criterio legislativo por el criterio gubernamental de Hacienda.

En su obligación de desentrañar y hacer que prevalezca el propósito legislativo, los tribunales deben evitar la interpretación de un estatuto que pueda conducir a resultados irrazonables o absurdos. Véase, *Pueblo v. Figueroa Santana*, res. el 23 de julio de 2001, 154 D.P.R. ___, 2001 TSPR 112, 2001 JTS 115; *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193 (1988); *Díaz v. Municipio de San Juan*, 117 D.P.R. 334 (1986). Igualmente, los tribunales no deben dar una interpretación ilógica a las leyes. En vista de lo anterior, y al amparo de la norma de hermenéutica consagrada en el Artículo 18 del Código

Civil,[33] que requiere una interpretación armónica de las leyes *in pari materia*, y presume que cuando la Asamblea Legislativa aprueba un estatuto, ha tomado en consideración la legislación adoptada anteriormente sobre el mismo asunto,[34] concluimos que la aprobación de la Ley Núm. 213, *supra,* tuvo el efecto de derogar la contribución de 2% impuesta a las compañías dedicadas a proveer servicios de telecomunicaciones de larga distancia.

Por los fundamentos antes expuestos, confirmamos el dictamen del Tribunal de Apelaciones y del Tribunal de Primera Instancia y ordenamos al Departamento de Hacienda el reembolso de las cantidades pagadas bajo protesta por las compañías recurridas.

Se dictará sentencia de conformidad.

Baltasar Corrada del Río
Juez Asociado

---

[33] 31 L.P.R.A. sec. 18. Véase además, *Cardona v. Dpto. Recreación y Deportes*, 129 D.P.R. 557 (1991).

[34] *Mc Crillis v. Autoridad de las Navieras de P.R.*, 123 D.P.R. 113 (1989).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Departamento de Hacienda
Secretario, Manuel Díaz Saldaña
   Peticionario


            v.
                                    CC-2001-223
     Certiorari
Telefónica Larga Distancia de
Puerto Rico, Inc., AT&T de Puerto
Rico, Inc., y Sprint Communications
Company, L.P.
   Recurridos


SENTENCIA


San Juan, Puerto Rico, a 17 de marzo de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma el dictamen del Tribunal de Apelaciones y del Tribunal de Primera Instancia y ordenamos al Departamento de Hacienda el reembolso de las cantidades pagadas bajo protesta por las compañías recurridas.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton, el Juez Asociado señor Fuster Berlingeri y la Juez Asociada señora Fiol Matta disienten sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo