El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
El caso ante nuestra consideración nos permite justipre-ciar si el Departamento de Asuntos del Consumidor (Daco) tiene jurisdicción para atender una querella en la que se impugna una cláusula del reglamento de un condominio sometido al régimen de propiedad horizontal, cuando dicho reglamento está inscrito en el Registro de la Propiedad. Resuelta dicha interrogante en la afirmativa, tenemos la oportunidad de dilucidar si nuestro ordenamiento jurídico permite que la Junta de Directores de un condominio im-ponga como sanción la suspensión de servicios esenciales, tales como el agua y la electricidad, a aquellos titulares que adeudan multas por violar las normas de administra-ción y sana convivencia estipuladas en el reglamento del condominio. Esto último, lo resolvemos en la negativa.
*555 I
Los hechos que originan el presente caso son relativa-mente sencillos y sobre estos no existe controversia.
El Sr. Joel Ayala Hernández (señor Ayala) adquirió un apartamento en el Condominio Bosque Sereno, situado en el municipio de Bayamón, el cual fue sometido al régimen de propiedad horizontal el 6 de junio de 2006.(1) A esa es-critura se le incorporó como Anejo “A” el Reglamento de Administración del Condominio.(2) Para la discusión de este caso es pertinente que citemos algunas disposiciones allí dispuestas que inciden directamente sobre el asunto que nos ocupa.
Conforme al Art. 31(A)(2) de ese Reglamento, estacio-narse en áreas restringidas conlleva una multa de $100.(3) En cuanto a esta cláusula no existe controversia. Ahora bien, el caso de autos tiene su génesis en el inciso (E) de ese precepto, que añadió lo siguiente:
[l]uego de tres violaciones a este Reglamento, previa oportu-nidad de defenderse dada al titular, éste quedará privado de su derecho al voto y de cualquier otro uso a las áreas comunes que “LA JUNTA” tenga a bien imponer. Será considerada la multa como un pago debidamente aprobado contra el titular, el cual está obligado a sufragar. De no hacerlo, se podrán to-mar contra el titular multado o sancionado, todas las medidas que provee la Ley de Condominios de Puerto Rico, la escritura matriz, y el presente Reglamento, contra el titular moroso de cuotas de mantenimiento. (Enfasis nuestro).(4)
Trascendió que durante el 2011 el administrador del Condominio Bosque Sereno notificó al señor Ayala tres avi-sos de multa por $100 cada una, por estacionar una motora *556 en un área prohibida. Este último impugnó las multas ante la Junta de Directores del Condominio (la Junta), pero no tuvo éxito. Así las cosas, el 30 de enero de 2012 el adminis-trador notificó al señor Ayala mediante correo certificado un Aviso de Corte de Servicios, advirtiéndole que de no pagarlas se le suspenderían los servicios de agua y electri-cidad a su apartamento, lo que ocurrió el 14 de febrero de 2012 ante la falta de pago.
Ese mismo día el señor Ayala acudió a Daco y presentó una querella en contra de la Junta y del Consejo de Titu-lares del Condominio en la que impugnó las multas y el corte de los servicios de agua y electricidad.(5) Más adelante, enmendó su reclamación para solicitar, entre otras cosas, que se declarara nulo el inciso (E) del Art. 31 del Reglamento del Condominio en cuanto le permite a la Junta suspender los servicios esenciales ante la existencia de deudas por multas administrativas, por considerarlo contrario a Derecho.(6)
Atendida la reclamación, el 30 de marzo de 2012 se ce-lebró la vista administrativa. Surge de la Resolución que posteriormente emitiera Daco que al comienzo de la misma la Junta solicitó que se desestimara la querella.(7) Ello, pues alegó que, conforme a la See. 26 del Reglamento sobre Condominios Núm. 6728 de Daco de 2 de diciembre de 2003, esa agencia no tenía jurisdicción para atender una reclamación en la que se cuestionara una cláusula de un reglamento inscrito en el Registro de la Propiedad.
Denegada esa petición, Daco resolvió los méritos de la querella. Si bien dictaminó que las multas eran proceden-tes, concluyó que fue ilegal la suspensión de los servicios de *557 agua y electricidad. A esos efectos, señaló que los Arts. 25 y 32 de la Ley de Condominios de 2003, Ley Núm. 103-2003 (31 LPRA secs. 1293b(i) y 1293c), autoriza que se suspen-dan esos servicios únicamente cuando los condominos adeudan cuotas de mantenimiento, derramas o la parte proporcional del seguro comunal. Conforme a esto, razonó que las deudas por multas por violación a las normas de sana convivencia dispuestas en el reglamento de un condo-minio no pueden considerarse para imponer ese tipo de sanción. Por ello, declaró nulo y sin eficacia jurídica la última oración del Art. 31(E) del Reglamento del Condominio Bosque Sereno, supra. Además, concedió al señor Ayala una indemnización por los gastos en que incurrió en el periodo en que estuvo sin los servicios de agua y electricidad en su apartamento.
En desacuerdo con esa determinación, la Junta presentó una moción de reconsideración que posteriormente se de-claró “no ha lugar”. (8) Inconforme, acudió al Tribunal de Apelaciones mediante un recurso de revisión judicial. En-tre otras contenciones, señaló que Daco erró al asumir ju-risdicción para atender la querella del señor Ayala, ya que conforme al propio Reglamento de Condominios de Daco le correspondía al Tribunal de Primera Instancia atender dicha materia.
Examinado el recurso, el Tribunal de Apelaciones emitió sentencia el 21 de diciembre de 2012. Respecto al asunto jurisdiccional, concluyó que Daco no podía arrogarse juris-dicción para atender la validez y legalidad del Art. 31 del Reglamento del Condominio Bosque Sereno, supra. Funda-mentó su decisión en la Sección 26 del Reglamento de Con-dominios de Daco, supra, que preceptúa que toda reclama-ción que consista en cuestionar una cláusula del reglamento de un condominio, cuando ese reglamento está *558 inscrito en el Registro de la Propiedad, se deberá ventilar ante el Tribunal de Primera Instancia. Por lo tanto, revocó la Resolución de la agencia en cuanto lo declaró nulo y sin eficacia jurídica. Asimismo, determinó que era improce-dente la indemnización que le concedió al señor Ayala, ya que estaba intrínsecamente relacionada al asunto de la le-galidad de la suspensión de los servicios de agua y electri-cidad, que se realizó en virtud del reglamento del condominio.
En desacuerdo con ese dictamen, el Daco presentó ante esta Curia un recurso de apelación y señaló que el foro apelativo intermedio erró al
[...] no pasar juicio sobre la razonabilidad de la decisión del DACO que concluyó que la actuación impugnada de la Junta de Directores del Condominio Bosque Sereno sobre corte de ser-vicios comunales al titular basado en multas no se ajustaba a la Ley de Condominios.(9)
Daco sostiene en su alegato que posee jurisdicción para atender querellas tales como la interpuesta por el señor Ayala. Arguye que esta involucraba la impugnación de acciones de una Junta que fueron gravemente perjudiciales para un titular, las cuales se fundamentaron en un regla-mento que era contrario a la Ley de Condominios de 2003. Asuntos que a su juicio quedan dentro del espectro de situaciones que le corresponde atender. Por otro lado, manifiesta que el hecho de no tener jurisdicción porque el reglamento de un condominio esté inscrito en el Registro de la Propiedad troncha sus facultades en un número significativo de los casos que le compete dilucidar al amparo de esa legislación.
El 26 de abril de 2013 acogimos el recurso como de cer-tiorari y lo expedimos. Contando con el beneficio de la com-parecencia de las partes, pasamos a resolver.
*559 II
A. Jurisdicción de las agencias administrativas
La jurisdicción se define como “el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir los asuntos que se sometan ante su consideración”. DACo v. AFSCME, 185 DPR 1, 12 (2012). Al igual que los foros judiciales, las agencias administrativas “no tienen discreción para asumir jurisdicción donde no la hay”. Íd.
Es conocido que para dilucidar qué jurisdicción tiene cierta agencia administrativa en cuanto a un asunto particular se analiza el poder que la Asamblea Legislativa le delegó a esta para determinar, ya sea mediante adjudicación o reglamentación, los derechos y obligaciones de quienes están sujetos a su ámbito de acción. D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Bogotá, Ed. Forum, 2013, págs. 35-36. Para ello, debemos dirigirnos a la ley habilitadora, también conocida como ley orgánica, que es la disposición que al crear la agencia le delega los poderes necesarios para actuar en conformidad con el propósito legislativo. DACo v. AFSCME, supra, pág. 12; D.A.Co. v. Fcia. San Martín, 175 DPR 198, 203 (2009). Ha de ser así pues es sabido que “una agencia administrativa no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no está claramente autorizada por ley para ello”. DACo v. AFSCME, supra, pág. 12. Véanse, además: López Nieves v. Méndez Torres, 178 DPR 803, 810 (2010); ASG v. Mun. San Juan, 168 DPR 337, 343 (2006). Es decir, solo puede llevar a cabo las funciones que se le han encomendado legislativamente, aquellas que surgen de su actividad o encomienda principal y ejercer los poderes que sean indispensables para llevar a cabo sus deberes y responsabilidades. Id. Véase, además, Amieiro González v. *560 Pinnacle Real Estate, 173 DPR 363, 371 (2008). Ante esa realidad, “al examinar la validez de una reglamentación de una agencia administrativa, los tribunales estamos obliga-dos a analizar: (1) si la actuación administrativa está au-torizada por ley; (2) si se delegó el poder de reglamenta-ción; (3) si la reglamentación promulgada está dentro de los poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica, y (5) si la reglamentación es arbitraria o caprichosa”. Vitas Health Care v. Hospicio La Fe et al., 190 DPR 56, 66-67 (2013). Véase, también, OEG v. Santiago Guzmán, 188 DPR 215 (2013).
En ese sentido, las agencias administrativas deben arribar a sus decisiones sin apartarse de la ley habilitadora aun cuando persigan un aparente propósito legítimo. En otras palabras, ni la necesidad ni la conveniencia pueden sustituir a la ley en cuanto a fuente de poder cuasilegislativo o cuasiadjudicativo. DACo v. AFS-CME, supra, pág. 12; Amieiro González v. Pinnacle Real Estate, supra, pág. 372; Raimundi v. Productora, 162 DPR 215, 225 (2004). Más aun, hemos resuelto que cualquier duda en cuanto a la existencia de poder cuasilegislativo o cuasiadjudicativo, debe resolverse en contra del ejercicio del mismo. íd. En otras palabras, las agencias administrativas no pueden actuar más allá de lo que les fue delegado, de manera que toda actuación administrativa que no obedezca el poder que le fue conferido mediante legislación debe catalogarse como ultra vires, y por ende, nula. DACo v. AFSCME, supra, pág. 13; Amieiro González v. Pinnacle Real Estate, supra, pág. 371. Véase, además, Fernández Quiñones, op. cit., págs. 161-165.
Ahora bien, ciertamente la legislatura está imposibilitada de anticipar en forma detallada, minuciosa o específica, la multiplicidad de situaciones que se pueden suscitar ante una agencia administrativa. Así lo reiteramos en *561 Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 93 (2010), cuando explicamos que
[e]l mundo moderno se caracteriza por la gran complejidad en las relaciones sociales y económicas de las personas, conjunta-mente con la progresiva supervisión gubernativa sobre la con-ducta individual, y ello implica que la legislatura está imposi-bilitada de anticipar legislativamente, en forma detallada, minuciosa o específica, la multiplicidad de situaciones que puedan surgir de esas relaciones complejas, siendo suficiente [que] la ley en cuestión señale o establezca normas amplias y generales que sirvan de guía o dirección a entidades adminis-trativas expertas, para que éstas, con su experiencia y conoci-mientos especiales, apliquen esas normas concretamente a los hechos que puedan surgir y ultimen los detalles que implemen-ten la política general legislativa. (Enfasis nuestro).(10)
En ese contexto, la ley siempre contendrá criterios am-plios y generales que servirán de guía y limitarán el uso de los poderes cuasilegislativos y cuasiadjudicativos de las agencias. Bomberos Unidos v. Cuerpo Bomberos et al., 180 DPR 723, 742 (2011). Empero, “[d]ichos criterios no tienen que ser expresos, [sino que] pueden surgir, inclusive, del historial legislativo”. Íd.
En lo que nos concierne, sabemos que al interpretar “el alcance de los poderes delegados a una agencia administrativa, no [se debe] limitar el análisis a una interpretación restrictiva de su estatuto habilitador”. D.A.Co. v. Fcia. San Martín, supra, págs. 203-204; ASG v. Mun. San Juan, supra, págs. 343-344. Sobre este particular, las leyes habilitadoras, así como cualquier otra ley, deben interpretarse tomando en cuenta la intención legislativa atribuyéndole un sentido que acierte el resultado pretendido por el legislador. ASG v. Mun. San Juan, supra; Vázquez v. A.R.Pe., 128 DPR 513, 523-524 (1991). Es decir, debemos brindar una interpretación cónsona con la intención legislativa, la política pública y el interés social que la inspira. *562 En ese ejercicio de hermenéutica, las diferentes secciones del estatuto se deberán interpretar en conjunto, de manera armoniosa y no aislada, para así evitar resultados desatinados, confusos, absurdos e irrazonables. Id. Véase, además, Departamento Hacienda v. Telefónica, 164 DPR 195, 214 (2005).
Es conocido que las leyes hay que interpretarlas tomando en consideración que todo acto legislativo persigue unos propósitos, entre estos: corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico, o reconocer algún derecho. Departamento Hacienda v. Telefónica, supra, pág. 214. Empero, siempre debe prevalecer el principio cardinal de que cuando la ley es clara y libre de toda ambigüedad, su letra no puede menospreciarse bajo el pretexto de cumplir su espíritu. Art. 14 del Código Civil, 31 LPRA sec. 14. Esto es así pues cuando el legislador se ha manifestado en un lenguaje claro e inequívoco, “el texto de la ley es la expresión por excelencia de toda intención legislativa”. Departamento Hacienda v. Telefónica, supra, pág. 215.
En este caso existe controversia en cuanto a si Daco tenía jurisdicción para atender la querella en la que se impugnó una cláusula del Reglamento del Condominio Bosque Sereno. La pugna surge como consecuencia de que fue el propio Daco quien al promulgar el Reglamento de Condominios Núm. 6728, supra, dispuso que no la tendría. A pesar de ello, dicha agencia atendió la querella del señor Ayala.
En ese escenario, la disposición de la presente contro-versia amerita que revisemos las leyes que le otorgan ju-risdicción a Daco. Luego debemos evaluar si conforme a la normativa de derecho antes discutida, Daco actuó de ma-nera ultra vires, tal como lo resolvió el Tribunal de Apela-ciones, o si por el contrario, el ejercicio cuasiadjudicativo que realizó estaba dentro de los contornos dispuestos por el *563 legislador para que actuara. Es necesario que atendamos este asunto con preeminencia, pues de ello depende que podamos entrar en los méritos del recurso. Véase García v. Hormigonera Mayagüezana, 172 DPR 1 (2007).
i. La jurisdicción de Daco para atender querellas presentadas a la luz de la Ley de Condominios de 2003
La Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341 et seq., creó a Daco con el propósito primordial de vindicar e implementar los derechos del consumidor. Esta agencia se concibió como “una agencia especializada con personal profesional y técnico altamente competente, para vindicar los derechos del consumidor de una forma agresiva y firme”. Exposición de Motivos de la Ley Núm. 5 (1973 Leyes de Puerto Rico 17). En otras ocasiones hemos mencionado que lo que inspiró la creación de Daco fue facilitar al consumidor la protección de sus intereses mediante un vehículo procesal ágil, eficiente y costo-efectivo. Véase Martínez v. Rosado, 165 DPR 582, 592 (2005). Por eso, su sistema administrativo debe ser más flexible que el de los trámites judiciales ordinarios; de lo contrario, se derrotaría todo su propósito. Íd.
Luego de la aprobación de la Ley Núm. 5, el legislador amplió el ámbito jurisdiccional de esa agencia para que atendiera ciertos asuntos relativos a la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como Ley de Propiedad Horizontal.(11) En específico, la Sec. 9 de la Ley Núm. 157 de 4 de junio de 1976,(12) amplió el alcance del Art. 42 de la referida Ley de Propiedad Horizontal, entre otros propósitos, “para distinguir entre condominios dedicados a comercios o establecimientos no residenciales y aquellos en que por lo menos hubiera un apartamiento de- *564 dicado a vivienda”. Pereira Suárez v. Jta. Dir. Cond., 182 DPR 485, 498 (2011). Esa distinción fue importante puesto que el foro donde se presentaran las impugnaciones de los titulares por violaciones a esa legislación dependía de la naturaleza del condominio en cuestión, a saber, si era resi-dencial o comercial. En los condominios no residenciales dichas acciones se presentarían en el extinto Tribunal Superior. Por otra parte, cuando se tratara de condominios dedicados a viviendas se ventilarían ante Daco. Sec. 9 de la Ley Núm. 157, supra. Véase, además, Consejo Cond. Plaza del Mar v. Jetter, 169 DPR 643, 659-661 (2006).
En incontables ocasiones nos hemos pronunciado en cuanto a diversas controversias surgidas a la luz de ese estatuto.(13) Y es que no era de esperarse menos, pues son múltiples los problemas que pueden surgir en un régimen de convivencia de horizontalidad. Ante ello, la Ley de Condominios de 2003 enmendó la otrora Ley de Propiedad Horizontal para establecer nuevos mecanismos para la tramitación de los inevitables conflictos dimanantes del modo de vida en un condominio, dotar de mayor eficacia ese régimen, y atender más adecuadamente el derecho de los titulares. Véase Exposición de Motivos de la Ley Núm. 103-2003, (Parte 1) Leyes de Puerto Rico 355. En cuanto a la jurisdicción de los diferentes foros para atender las controversias que se suscitaran a la luz de la misma, se enmendó el Art. 42 de la Ley Núm. 104 para que leyera como sigue:
[l]os acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que somete el inmueble al régimen que establece este capítulo, durante el período de administración que contempla la sec. 1293-1 de este título, del Presidente y *565 del Secretario, concernientes a la administración de inmuebles que no comprendan apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamiento dedi-cado a vivienda, serán impugnables ante el Tribunal de Primera Instancia por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace referencia la see. 1293 de este título. Las impugnaciones por los titulares de apartamientos destina-dos a viviendas se presentarán ante el Departamento de Asun-tos del Consumidor. (Enfasis nuestro). Art. 34 de la Ley Núm. 103-2003 (31 LPRA sec. 1293f).
Para cumplir con esos propósitos, la Ley de Condominios de 2003 creó una división especial dentro de Daco para que atendiera “exclusivamente, todo lo concerniente a los condominios”. (Enfasis y subrayado nuestros). Véase Exposición de Motivos de la Ley Núm. 103-2003, supra, pág. 358. Al respecto, el Art. 38 de ese estatuto estableció lo siguiente:
[s]e crea en el Departamento de Asuntos del Consumidor una División Especial de Adjudicación de Querellas de Condo-minios, para atender todo lo relacionado a todo condominio en el que exista por lo menos un apartamiento dedicado a vivienda. Esta División tendrá un Director como Jefe, nom-brado por el Secretario de dicho departamento. Sujeto a las disposiciones de la Ley de Personal vigente, el Secretario nom-brará, además, los supervisores, inspectores, funcionarios de consulta, oficiales examinadores o jueces administrativos, abo-gados del interés público y el personal administrativo necesa-rio para la pronta atención de las querellas presentadas por los titulares de apartamientos al amparo de este capítulo, o por la Junta de Directores al amparo de aquellas leyes especiales aplicables. (Énfasis y subrayado nuestro). 31 LPRA see. 1294.
Cabe señalar que durante el proceso de aprobación de la Ley de Condominios de 2003 se resaltó que esa era la agen-cia con el peritaje para atender las controversias presenta-das por los titulares de apartamentos residenciales some- *566 tidos al régimen de propiedad horizontal, pues había manejado esos asuntos hace décadas. Véase Informe Conjunto de las Comisiones de Vivienda, de Banca y Asuntos del Consumidor, y de lo Jurídico sobre el P. del S. 1425 de 12 de noviembre de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordinaria. Véase, también, First Fed. Savs v. Asoc. de Condómines, 114 DPR 426 (1983). Como señala el profesor Godreau, esta División se creó para asegurarse de que los jueces administrativos que atienden querellas de condominios fueran funcionarios verdaderamente especializados en la ley y en los reglamentos aplicables. Esto, para facilitar la solución uniforme y consecuente de las controversias típicas de los condominios por profesionales especializados en la propiedad horizontal. M.J. Godreau, La Nueva Ley de Condominios, 2da ed., San Juan, Ed. Dictum, 2003, pág. 40. Se desprende del Diario de Sesiones de la Cámara de Representantes de 5 de marzo de 2003, pág. 113, que esta nueva División
[s]e [creó] para beneficio del consumidor puertorriqueño [...] para atender las querellas que se presentan en el Departa-mento, y no atenderlas de forma uniforme a todas las demás querellas que se presentan en ese Departamento. Ahora el Se-cretario del DACO es responsable de crear una división espe-cializada con personal especializado para aligerar la solución de estas querellas que se presentan en este Departamento.
El Art. 38 de la Ley de Condominios de 2003, supra, también facultó al Secretario de Daco para que adoptara un reglamento especial para la adjudicación de las querellas presentadas en esa nueva división. Con ese propósito se promulgó el Reglamento de Condominios Núm. 6728 que ya hemos mencionado, que entre otros aspectos, regula la jurisdicción de la agencia para atender las querellas que se presentan al amparo de la Ley de Condominios de 2003. En lo que nos concierne, la See. 26 del mismo dispone como sigue:
[c]ualquier titular o grupo de titulares de condominios *567 donde exista por lo menos una unidad de vivienda, podrá im-pugnar ante este Departamento cualquier acuerdo, determi-nación, omisión o actuación del Consejo de Titulares, del Director o de la Junta de Directores, presidente o del secretario de la Junta de Directores o de la persona que someta el inmue-ble al Régimen de Propiedad Horizontal, mientras éste sea a su vez, el administrador interino del condominio y del Síndico; siempre y cuando el acuerdo, determinación, omisión o actua-ción en cuestión sea gravemente perjudicial para el titular o grupo de titulares que impugna o para la comunidad de titu-lares o cuando dicho acuerdo, determinación, omisión o actua-ción sea contraria a la Ley, a la escritura de constitución al Régimen de Propiedad Horizontal, al Reglamento del Condo-minio y a este Reglamento. Reglamento de Condominios Núm. 6728, supra, Sec. 26, pág. 42.
Ahora bien, excluyó de la jurisdicción del Daco ciertos asuntos,(14) entre ellos:
[...] toda reclamación que consista en cuestionar alguna cláusula contenida en la escritura matriz o el reglamento del condominio inscrito en el Registro de la Propiedad. [...] La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia. Reglamento de Condominios Núm. 6728, supra, pág. 43.
En varias ocasiones esta Curia ha hecho referencia a esa disposición reglamentaria para auscultar el ámbito jurisdiccional de Daco para atender ciertas controversias.(15) No obstante, no habíamos tenido la oportunidad de abordar esa sección en cuanto a la limitación que impone para entender en un asunto como el que nos ocupa. La Junta sostiene que Daco no tenía jurisdicción para *568 atender la querella del señor Ayala en virtud de la Sec. 26 del Reglamento Núm. 6728, supra. Ciertamente, las agen-cias administrativas están obligadas a cumplir sus propios reglamentos una vez los promulgan. Precisamente, fue en ese artículo que se amparó el Tribunal de Apelaciones para revocar la resolución del Daco, siendo este un caso anó-malo, pues la agencia no obedeció su propio reglamento para finalmente asumir jurisdicción sobre un asunto en el cual se había abstenido de intervenir. Examinemos este particular.
Las agencias administrativas tienen la facultad de adoptar reglas de carácter legislativo según le haya delegado la Asamblea Legislativa.(16) Buono Correa v. Srio. Rec. Naturales, 177 DPR 415, 449 (2009). Como ya aludimos, cuando una agencia administrativa promulga un reglamento de este tipo, este tiene fuerza de ley por ser de carácter vinculante y determinante en cuanto a los derechos, deberes y obligaciones de las personas sujetas a la jurisdicción de la agencia. López Leyro v. E.L.A., 173 DPR 15, 24-25 (2008); Torres Arzola v. Policía de P.R., 117 DPR 204, 211 (1986). Por ello, una vez se aprueba, la ciudadanía en general, incluyendo la propia agencia que lo adoptó, están obligados por este. Id. En conformidad con ello, hemos expresado que después de que una agencia define los contornos de su acción mediante un reglamento, tiene la responsabilidad de aplicarlo celosamente. Íd.
Ahora bien, cuando las agencias promulgan un reglamento se requiere que lo hagan en cumplimiento con los parámetros pautados por su ley orgánica. Buono Correa v. Srio. Rec. Naturales, supra, págs. 449-450. Al respecto, es importante recalcar que si bien una agencia no puede actuar más allá de lo autorizado por ley, tampoco puede *569 imponer mediante un reglamento más limitaciones de lo que autorice su ley habilitadora. Vitas Health Care v. Hospicio La Fe et al., supra; Gutiérrez v. A.A.A., 167 DPR 130, 143 (2006). Véase, además, M. & B. S., Inc. v. Depto. de Agricultura, 118 DPR 319 (1987). El tribunal en su función revisora determinará si la actuación administrativa se ajusta o no al poder delegado.(17) DACO v. Servidores Públicos Unidos, 187 DPR 704 (2013). Sabemos que en esa tarea debemos dar deferencia a la interpretación que realizan las agencias administrativas en cuanto a sus propios reglamentos; no obstante, esas interpretaciones deben es-tar en concordancia con su ley orgánica. López Leyro v. E.L.A., supra, págs. 25-26. “[L]a presunción de corrección de las decisiones administrativas cede cuando el organismo administrativo desobedece el mandato legislativo pautado en una ley”. Higo Margarida v. Junta Directores, 187 DPR 384, 394 (2012).
ii. Jurisdicción de Daco para atender controversias re-lacionadas a impugnaciones de cláusulas de reglamentos que constan inscritos en el Registro de la Propiedad
Es sabido que la jurisdicción de Daco no se extiende a toda causa de acción que pueda surgir en un condominio sometido al régimen de propiedad horizontal. Así lo hemos reiterado en varias ocasiones. Sin embargo, es menester señalar que las veces en que hemos hecho alusión a ese principio ha sido en situaciones en las que era evidente que cierto tipo de acción quedaba fuera de su jurisdicción. Así, por ejemplo, en Consejo Cond. Plaza del Mar v. Jetter, su *570 pra, pág. 662, enunciamos que Daco no tiene jurisdicción para dirimir controversias sobre “actos que no sean de ín-dole voluntaria o que trasciendan los intereses personales y privados de los titulares”. Véase, también, Consejo Titulares v. Gómez Estremera et al., 184 DPR 407 (2012). No obstante, a la luz del marco normativo discutido, hoy arri-bamos a la conclusión de que el legislador sí le confirió a Daco el poder de adjudicar controversias relativas a la im-pugnación de reglamentos aun cuando estos se encuentren inscritos en el Registro de la Propiedad, y aun cuando el propio Daco haya limitado su autoridad para adjudicar esos asuntos. Veamos.
Del Art. 38 de la Ley de Condominios de 2003, supra, que creó en Daco la División Especial para la adjudicación de querellas de condominios, no se desprende que el legislador haya hecho una reserva específica dentro del universo de “todos los asuntos de condominios” que le delegó atender a esa agencia. Nótese que sí lo hizo en cuanto a los asuntos referentes a la cubierta de seguros. Específicamente, estatuyó en cuanto a esto que toda querella relacionada con la cubierta o los términos del contrato de seguros fuera referida a la Oficina del Comisionado de Seguros de Puerto Rico para su consideración. No existe reserva adicional —claro está, considerando a las que ya hicimos alusión— en cuanto a la jurisdicción de Daco relativa a las impugnaciones presentadas por los titulares contra el Consejo de Titulares o contra la Junta de Directores.
Por otra parte, el Art. 34 de la Ley de Condominios de 2003, supra, establece una serie de actos que se pueden impugnar ante los foros judiciales o administrativos. Estos son los siguientes: los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que somete el inmueble al régimen de propiedad horizontal durante el periodo de administración y los acuerdos del Pre- *571 sidente y del Secretario cuando dicho acuerdo, determina-ción, omisión o actuación resulta gravemente perjudicial para el titular o es contrario a la ley, a la escritura matriz o al reglamento del condominio. Luego, dicho articulado procede a establecer en qué foro se dilucidarán estas con-troversias dependiendo única y exclusivamente de la natu-raleza residencial o comercial del inmueble. Específica-mente, señala que este tipo de impugnaciones se presentarán en Daco cuando quien impugne sea un titular de un apartamento destinado a vivienda. No se establece ninguna otra salvedad.
De lo antes discutido no vemos razón para concluir que dentro de los criterios amplios y generales que dispuso el legislador en la Ley de Condominios de 2003, el campo de actuación de Daco respecto a las controversias sobre la va-lidez de los reglamentos de los condominios sometidos al régimen de propiedad horizontal deba limitarse. No surge de la intención legislativa que el ejercicio de la agencia en cuanto a estos asuntos quedara supeditado a que los regla-mentos de los condominios estuvieran o no inscritos en el Registro de la Propiedad.
Por lo tanto, constituye un error manifiesto que el pro-pio Daco se haya impuesto más limitaciones que las que determinó la Ley de Condominios de 2003 al crear la Divi-sión Especial del Daco con el propósito de que atendiera las controversias suscitadas al amparo de esa ley. Al así ha-cerlo, actuó en contravención a la ley que le otorgó los pa-rámetros jurisdiccionales necesarios para que ejerciera el propósito por el cual se concibió dicha dependencia en la agencia. Por ello, no podemos avalar ese curso de acción, la interpretación que a esos efectos realizó el Tribunal de Apelaciones, pues tiene como consecuencia que la agencia administrativa evada las responsabilidades que le fueron delegadas por la Asamblea Legislativa.
Por otra parte, si bien es cierto que la jurisdicción que se le confirió a Daco no se extiende a toda causa de acción que *572 dimane del régimen de horizontalidad, su reglamento no puede imponer más limitaciones que las dispuestas en la ley. Esa limitación consignada en la See. 26 del Regla-mento Núm. 6728, supra, no es cónsona con el propósito legislativo. Máxime, cuando el propio Reglamento de Condominios Núm. 6728 establece en su Sec. 4, supra, pág. 2, que sus disposiciones se deberán interpretar liberalmente a favor de los titulares, en ánimo de cumplir los mandatos de la Ley de Condominios de 2003. Como ya mencionamos, uno de los asuntos que el legislador consideró que los titulares podían impugnar ante Daco eran las determinaciones, omisiones o actuaciones de la Junta contrarias a la ley. Uno de esos asuntos puede ocurrir cuando el propio reglamento del condominio sea ilegal en sí. Debemos considerar en ese sentido que la propia Ley de Condominios de 2003 dictamina en su Art. 36 que el reglamento de administra-ción del condominio “deberá insertarse en la escritura [de constitución del régimen de propiedad horizontal], o [...] se agregará a dicha escritura”. 31 LPRA sec. 1293. Y añade que “[c]opia certificada [...] del Reglamento, y de toda en-mienda a los mismos, deberá quedar archivada en el Re-gistro de la Propiedad”. Id. Por lo tanto, es de esperarse que en la mayoría de las ocasiones en que los titulares impugnen actos de la Junta de Directores fundamentados en un reglamento que contenga cláusulas ilegales, ese reglamento conste inscrito en el Registro de la Propiedad.
Ante esto, la interpretación del Tribunal de Apelaciones implicaría dejar desprovisto de un remedio ágil y económico a los titulares si la acción u omisión que impugnan está amparada en alguna cláusula del reglamento del condominio. Por lo tanto, resolvemos que de las disposiciones de la Ley de Condominios de 2003, supra, se desprende que Daco tiene jurisdicción para atender una querella en la que se impugna la cláusula de un reglamento de un condominio aun cuando este se encuentre inscrito en el Regis- *573 tro de la Propiedad. (18) En consecuencia, Daco no podía coartar la jurisdicción que el legislador le confirió expresamente.
Finiquitado ese asunto, pasemos a dirimir si Daco resol-vió correctamente cuando determinó que la cláusula 31(E) del Reglamento del Condominio Bosque Sereno era nula.
III
Conforme a la Ley de Condominios de 2003 la administración de todo inmueble sometido al régimen de propiedad horizontal se regirá —en unión a las disposiciones de la ley— por un reglamento que deberá insertarse en la escritura de constitución del régimen o que se agregará a la misma. 31 LPRAsec. 1293. Como ya mencionamos, ese Reglamento se inscribirá en el Registro de la Propiedad, de manera que sus disposiciones sean oponibles a terceros. Art. 23 de la Ley de Condominios de 2003 (31 LPRA see. 1293a). Este reglamento debe contener ciertos extremos obligatorios, entre ellos: el sistema de convocatoria uniforme para las asambleas de los titulares, la definición del concepto mayoría que regirá el inmueble, la manera de recaudar los fondos para los gastos comunes y la forma de administración del condominio. 31 LPRAsec. 1293a. Dicho articulado es enfático al establecer que las normas o reglas en torno al uso del inmueble y sus apartamientos, ejercicios de derechos, instalaciones y servicios, gastos, administración y gobierno no pueden contravenir las disposiciones de la Ley de Condominios de 2003. En este caso, es preciso abordar la legalidad de la suspensión de servicios esenciales como consecuencia de la falta de pago de multas administrativas según se estableció en el Art. 31(E) del Regla- *574 mentó del Condominio Bosque Sereno. Examinemos este particular.
La Ley de Condominios de 2003 regula en su Art. 32 lo concerniente a las contribuciones para el pago de los gastos de administración y conservación del inmueble. 31 LPRA sec. 1293c. Allí se establece que los titulares de los aparta-mentos están obligados a contribuir proporcionalmente a los gastos de administración, conservación y reparación de los elementos comunes generales del inmueble y otros gastos según se hayan acordado legítimamente. Hemos reiterado que estas contribuciones —las llamadas cuotas de mantenimiento— son para preservar las mejores condiciones de los elementos comunes y facilitar su uso. Asoc. Cond. Balcones S.Ma. v. Los Frailes, 154 DPR 800, 815 (2001). Desde Maldonado v. Consejo de Titulares, 111 DPR 427, 430 (1981) señalamos que
[l]as cuotas que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garanti-zar el buen funcionamiento del régimen. Sin la aportación pro-porcional a las expensas del inmueble, el régimen no puede sobrevivir y se derrotaría la política pública al respecto. Sin embargo, hoy día la morosidad en el pago de las cuotas de mantenimiento parece ser [panjdémica.
En el caso precitado nos correspondió atender si el Consejo de Titulares de un condominio sometido al régimen de Propiedad Horizontal podía acordar suspender válidamente el servicio de agua potable a un condomino moroso en el pago de sus cuotas de mantenimiento. Tras analizar la Ley de Propiedad Horizontal resolvimos que ello no iba en contra de la ley, la moral o el orden público, sino que al contrario, propendía a la plena realización de la política pública recogida en esa ley. Hoy día, el Art. 32 de la Ley de Condominios de 2003, supra, preceptúa que
[a]quellos titulares que adeuden tres (3) o más plazos consecutivos de cuotas, independientemente del número de apar- *575 tamientos [sic] de que sean propietarios, quedarán temporal-mente privados de ejercer su derecho al voto en las reuniones del Consejo de Titulares, incluidos aquellos asuntos que re-quieran el consentimiento unánime; ni se contará su voto o su porcentaje de participación para propósitos de quorum cuando este capítulo requiera tal consentimiento, hasta tanto satisfa-gan la deuda en su totalidad o el Tesorero certifique que el titular está al día en el plan de pago aprobado por la Junta de Directores con anterioridad a la asamblea en cuestión. Ade-más la Junta de Directores podrá ordenar la suspensión del servicio de agua potable, electricidad, gas, teléfono, así como los servicios de transmisión de voz, video y data, y ¡o cualquier otro servicio similar cuando el suministro de éstos llega por medio de instalaciones que constituyen elementos comunes ge-nerales del inmueble. La suspensión podrá ordenarse también cuando el titular no pague su parte proporcional del seguro comunal. (Corchetes en el original y énfasis nuestro).
Antes de sus posteriores enmiendas, ese Art. 39 según promulgado en la Ley Núm. 157, supra, establecía en cuanto a esto que
[a] quellos titulares que adeuden tres (3) o más plazos con-secutivos, quedarán temporalmente privados de ejercer su de-recho al voto en las reuniones del Consejo de Titulares hasta tanto satisfaga la deuda en su totalidad. 1976 Leyes de Puerto Rico 505.
Posteriormente, la Ley Núm. 129-1994 enmendó los Arts. 38 y 39 de la anterior Ley de Propiedad Horizontal para garantizar el funcionamiento de los elementos comunes de un inmueble sometido al régimen cuando hay condominos morosos que no aportan a las cuotas de mantenimiento. 1994 (Parte 2) Leyes de Puerto Rico 1239. A esos propósitos se estatuyó que se le podría suspender el servicio de agua potable, electricidad, gas, teléfono y cualquier otro servicio similar suministrado por medio de elementos comunes del inmueble, a los titulares que adeudaran tres o más plazos consecutivos de sus cuotas. Véanse las Secs. 1 y 2 de la Ley Núm. 129-1994, supra, págs. 1240-1241. En la Exposición de Motivos de esa legislación se estableció lo siguiente;
*576 El propósito de la presente medida es garantizar que un inmueble sometido al régimen de propiedad horizontal, no se vea afectado en su funcionamiento cuando condómines moro-sos se atrasan exageradamente en sus cuotas de manteni-miento y provoquen con esto que los demás condómines tengan que cubrir los gastos de aquéllos para mantener en funciona-miento los elementos comunes.
Es necesario proveerle a la Junta o Consejo de Titulares un medio para ser utilizado cuando se han agotado los recursos en cuanto al cobro de las cuotas adeudadas y el condómine mo-roso se niega a satisfacer esa deuda. Es injusto que los demás titulares tengan que verse afectados cuando para el buen fun-cionamiento del inmueble hay que sufragar esos gastos.
No podemos permitir que abusivamente, perjudique a los demás titulares cuando no exista justificación para los atrasos en el pago, de la cuota de mantenimiento.
Esta ley facultará al Consejo de Titulares a ordenar la sus-pensión de aquellos servicios que se reciben a través o por medio de los elementos comunes cuando algún condómine se atrase injustificadamente en el pago de la cuota de mantenimiento por un término igual o mayor a tres pagos y no satisfaga la totalidad de dicha deuda a pesar de habérsele requerido. (Énfasis nuestro). 1994 (Parte 2) Leyes de Puerto Rico 1239-1240.
Como podemos apreciar, el propósito de establecer esa medida fue persuadir a los titulares a que pagaran puntualmente las cuotas necesarias para mantener los elementos comunes del inmueble en buen funcionamiento. Actualmente, el Art. 25(i) de la Ley de Condominios dispone que la Junta podrá
[o]rdenar que se suspendan los servicios recibidos a través o por medio de los elementos comunes generales, incluidos los servicios de agua, gas, electricidad, teléfono y/o cualquier otro servicio similar a éstos, a aquellos condominos morosos que, al no pagar sus cuotas de mantenimiento o su parte proporcional del seguro comunal, se sirven graciosamente de los elementos a cuyo mantenimiento no contribuyen como les corresponde, adeudan dos (2) o más plazos consecutivos de sus cuotas. [...] Cuando se trate de una derrama, cuyos plazos no se hayan incorporado a la cuota de mantenimiento mensual, la suspen-sión de los servicios podrá efectuarse una vez transcurridos *577 dos (2) meses desde el plazo final establecido para su pago [...] (Énfasis nuestro). 31 LPRA sec. 1293b(i).
Al discutirse la Ley de Condominios de 2003 en la Cá-mara de Representantes se mencionó lo siguiente en cuanto a la suspensión de servicios que contiene el artículo precitado:
[o]tra gran iniciativa que me parece importante destacar, es que hemos sido un poco más rigurosos en el área de la suspen-sión del servicio por el pago de incumplimiento de cuotas, el famoso corte de agua y de luz que ha sido algo que se ha cues-tionado grandemente. (Énfasis nuestro). Diario de Sesiones de la Cámara de Representantes de 5 de marzo de 2003, supra, pág. 113.
Como nos señala el profesor Godreau, “ [e]l carácter especial con que el legislador ha dotado la deuda de mante-nimiento en un condominio impide aceptar interpretacio-nes que debiliten los mecanismos que garanticen su cobro”. Godreau, op. cit, pág. 53. Por ello, el legislador quiso ser riguroso con este asunto. Ese tipo de deuda se consideró revestida de alto interés público. Informe Conjunto sobre el P. del S. 1425, supra, pág. 31.
La cláusula del Reglamento del Condominio Bosque Se-reno impugnada por el señor Ayala establece el corte de los servicios esenciales que se suplen mediante elementos co-munes del inmueble como penalidad ante la falta de pago de multas administrativas por infracciones dispuestas en el reglamento. Es decir, le impone para ese caso la misma sanción que la Ley de Condominios establece para los deu-dores morosos de cuotas de mantenimiento. Daco resolvió que ello es contrario a la Ley de Condominios de 2003, e igual hacemos nosotros. Veamos.
Debido a la importancia que reviste el pago de las cuotas para el mantenimiento de las áreas comunes es que el legislador fue enérgico y diseñó este mecanismo especial para compeler a los titulares a que no incurrieran en *578 atrasos en el pago de las mismas. Ahora bien, ello no está establecido para el caso de multas administrativas por violaciones a las normas de sana convivencia contenidas en el reglamento de un condominio que regulen acciones u omisiones ajenas a deudas de mantenimiento, derramas o su parte proporcional del seguro comunal. No existe indicio alguno en la intención legislativa de que se hubiese querido extender ese tratamiento a otro tipo de deudas, todo lo contrario. La única instancia en la que procede la suspen-sión de dichos servicios es cuando acontece la falta del pago de cuotas de mantenimiento o su parte proporcional del seguro comunal, lo que implica que el titular no está con-tribuyendo al mantenimiento de las áreas comunes por las cuales se suplen estos.(19) Sería una extralimitación suspender este tipo de servicios a un titular que ha cumplido con el pago de sus cuotas, por faltas a otras normas que el legislador no estableció para ese tipo de sanción. Además, ese no es un procedimiento que la Junta de Directores pueda realizar arbitrariamente. En ese sentido, la ley ins-tituyó un trámite específico para ello, y de hecho, establece unas salvaguardas para cuando esa medida pueda signifi-car un riesgo para la seguridad y la salud del titular moroso. Véase Art. 32 de la Ley de Condominios de 2003 (31 LPRA sec. 1293c). Por lo tanto, actuó acertadamente Daco al resolver que la cláusula 31(E) del Reglamento del Condominio Bosque Sereno es contraria a derecho por esta-blecer un mecanismo de acción no permitido por la Ley de Condominios de 2003.
Por último, la Junta aduce en su alegato que la propia Ley de Condominios de 2003, al conferirle la facultad de *579 cobrar las deudas que los titulares mantienen con la comu-nidad e imponer multas por infracciones a las reglas de sana convivencia y cobrar las mismas, tácitamente le autorizó a ejecutar las acciones que sean necesarias para ese propósito.(20) Sostiene que de impedirle lo que estipula el Art. 31(E) del Reglamento del Condominio Bosque Sereno, esas multas por infracciones quedarían impunes.(21) Argumentan, que quedarían huérfanos de compeler a un titular infractor a que pague voluntariamente las deudas por ese concepto, pues sostiene que de no poder suspender los servicios esenciales como medida disuasiva, no podrían velar por el fiel cumplimiento del reglamento del condominio. Rechazamos tal contención. Veamos.
La Ley de Condominios asigna responsabilidades a todos los componentes del régimen de propiedad horizontal, es decir, a los titulares, al consejo de titulares y a la Junta de Directores. Para ello les exige obrar según principios de buena fe, tanto en el quehacer administrativo como en el privado. Consejo Titulares v. Ramos Vázquez, 186 DPR 311, 327 (2012). Esta ley en su Art. 25(j), 31 LPRA sec. 1293b(j), faculta al Consejo de Titulares a autorizar a la Junta de Directores —“mediante delegación expresa en el Reglamento”— a imponer multas de hasta $100 al titular o residente que viole las normas de convivencia estatuidas en la escritura matriz, la ley o el reglamento del condominio.
En este caso, el Reglamento del Condominio Bosque Se-reno dispone una norma sobre los lugares designados para estacionar vehículos de motor. Estamos contestes en que la Ley de Condominios le reconoce al Director o la Junta de Directores el deber y la facultad de cumplir y hacer cum-plir las disposiciones de ese reglamento. La responsabili-dad fundamental de la Junta de Directores “estriba en ve *580 lar por el buen funcionamiento del condominio logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, las de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares”. M.J. Godreau, Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directores y del presidente para llevar acciones a nombre del condominio, 64 (Núm. 3) Rev. Jur. UPR 481, 481 (1995). Así lo señala la ley al prescribir en su Art. 29 que la Junta de Directores tendrá el deber de “[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas adver-tencias y apercibimientos a los titulares”. 31 LPRA sec. 1293b-4(i). Además, tiene todos los deberes que le sean asignados. 31 LPRA 1293b-4. Empero, estos deben ejecutarse dentro de los parámetros definidos en la ley.
No nos persuade el argumento de la Junta a los efectos de que quedarían desprovistos de medios eficientes para hacer cumplir las normas de administración dispuestas en el reglamento del condominio. Como se sabe, el Art. 10 de la Ley de Condominios establece que el uso y disfrute de cada apartamiento estará sometido a ciertas reglas allí enumeradas. 31 LPRA sec. 1291m. Este precepto establece categóricamente, entre otras exigencias, que
[...] todo titular u ocupante cumplirá estrictamente con las disposiciones de administración que se consignen en este ca-pítulo, en la escritura o el Reglamento a que se refiere la see. 1293 de este título.
Al hacer referencia a las infracciones a este tipo de nor-mas dicho precepto señala que
[l]a infracción de estos principios [...] dará lugar al ejercicio de la acción de daños y perjuicios por aquel titular u ocupante *581 que resulte afectado, además de cualquier otra acción que co-rresponda en derecho, incluidos los interdictos, las disposicio-nes dispuestas en la Ley sobre Controversias y Estados Provi-sionales de Derecho, sees. 2871 et seq. del Título 32, y cualquier otro remedio en equidad. (Enfasis nuestro).
Por consiguiente, razonamos que estos son los mismos remedios y acciones judiciales que tiene disponible una Junta de Directores de un condominio para hacer cumplir las disposiciones del reglamento de administración. Claro está, además de aquellos medios que se dispongan en el reglamento siempre y cuando no sean contrarios a la ley.
IV
Por los fundamentos que anteceden, resolve-mos que Daco tiene jurisdicción para atender querellas en las que se impugne: (1) la validez de una cláusula de un reglamento de un condominio, aun cuando dicho cuerpo reglamentario conste inscrito en el Registro de la Propiedad, y (2) actos realizados por una Junta de Directores de un Condominio, aun cuando estos actos se fundamenten en las disposiciones de un reglamento que esté inscrito en el Registro de la Propiedad. Así también, colegimos que, conforme al Art. 25 de la Ley de Condominios de 2003, supra, la suspensión de los servicios esenciales que se suplen mediante elementos comunes generales únicamente procede contra el titular moroso que adeuda cuotas de mantenimiento, derramas o su parte proporcional del seguro comunal.

En consecuencia, revocamos la sentencia del Tribunal de Apelaciones que dispuso que Daco no tiene jurisdicción para adjudicar la validez o nulidad del Art. 31(E) del Re-glamento del Condominio Bosque Sereno.

 Véase Escritura Pública Núm. 25 sobre Constitución del Régimen de Propiedad Horizontal de Bosque Sereno, Apéndice, pág. 143.

 Íd., pág. 259.

8) Íd., pág. 302.

 Íd., pág. 303.

 Véase Querella, id., pág. 138. Trascendió que tras presentar la querella, el señor Ayala pagó las multas el 17 de febrero de 2012 por lo que se le reestablecieron los servicios suspendidos. Véase Resolución del Departamento de Asuntos del Consumidor (Daco) de 4 de abril de 2012. Id., pág. 3.

 Véase Enmienda a Querella, id., pág. 125.

 Véase Resolución, id., pág. 5.

 íd., pág. 13. En esta moción la Junta cuestionó nuevamente la jurisdicción de Daco para atender la controversia.

 Véase Apelación, pág. 7.

 Citando a Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 692-693 (1953).

 Posteriormente redenominada como la Ley de Condominios de 2003. Para una exposición más detallada sobre el surgimiento de este régimen en Puerto Rico, véase Bravman, González v. Consejo Titulares, 183 DPR 827 (2011).

 1976 Leyes de Puerto Rico 506.

 Véanse, por ejemplo: Consejo Titulares v. Ramos Vázquez, 186 DPR 311 (2012); Consejo Titulares v. Gómez Estremera et al., 184 DPR 407 (2012); Consejo Cond. Plaza del Mar v. Jetter, 169 DPR 643 (2006); Asoc. Cond. Balcones S.Ma. v. Los Frailes, 154 DPR 800 (2001); Maldonado v. Consejo de Titulares, 111 DPR 427 (1981).

 El Departamento no tendrá jurisdicción para entender en controversias que surjan contra el agente administrador. Las mismas corresponderán atenderlas al Director o la Junta de Directores y al Consejo de Titulares. El Departamento no tendrá jurisdicción para adjudicar querellas que surjan en condominios de uso ex-clusivamente comercial o profesional. Igualmente carecerá de jurisdicción en aque-llos condominios donde exista por lo menos una unidad de vivienda, y la querella sea interpuesta por un titular o grupo de titulares de apartamentos no residenciales. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. El Depar-tamento solo atenderá reclamaciones del titular o grupo de titulares que sean propietarios de las unidades residenciales.

 Véase, por ejemplo, Consejo Titulares v. Gómez Estremera et al., supra.

 “[U]na regla legislativa es aquella que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley”. Mun. de San Juan v. J.C.A., 152 DPR 673, 692 (2000).

 En ese sentido debemos tener en cuenta que al evaluar el ejercicio euasile-gislativo de alguna agencia administrativa debemos observar, entre otros aspectos, si la actuación administrativa estaba autorizada por ley, si se delegó el poder de reglamentación, si la regla o reglamento impugnado está dentro de los amplios poderes delegados y si la reglamentación es arbitraria o caprichosa. Dañosa Caribbean v. Neg. Asist. Contr., 185 DPR 1008, 1029-1030 (2012). Nótese que en este caso no se está impugnando el Reglamento Núm. 6728 de Daco de 2 de diciembre de 2003. No obstante, es importante que justipreciemos el contenido de su See. Núm. 26 para evaluar si efectivamente Daco ostentaba o no jurisdicción para atender la querella del señor Ayala.

 Claro está, ello no implica que Daco tenga la facultad de ordenar al Registrador de la Propiedad que realice acto alguno con respecto a un reglamento que conste inscrito en el Registro de la Propiedad.

 Así lo señalamos en Maldonado v. Consejo de Titulares, supra, pág. 430, cuando expresamos, ante unos hechos en que un titular había incurrido en morosidad en cuanto a sus cuotas de mantenimiento, que: “A pesar de que no paga, el demandante se beneficia de todos los elementos comunes generales, tales como el uso de los ascensores, patio, piscina, pasillos, escaleras, líneas eléctricas comunales, tubería de agua potable comunal, tubería de desagüe comunal, bomba de agua potable, cisterna, iluminación exterior, vestíbulo y pasillos de acceso a su apartamiento”. (Enfasis nuestro y en el original).

 Alegato de la parte recurrida, pág. 9.

 íd., pág. 10.