| | |
|---|---|
| Engineering Services International, Inc.<br><br>Peticionaria<br><br>v.<br><br>Autoridad de Energía Eléctrica de Puerto Rico<br><br>Recurrida<br><br>CEPR de Energía de Puerto Rico<br><br>Agencia recurrida | Certiorari<br><br>2020 TSPR 103<br><br>205 DPR \_\_\_\_\_ |

Número del Caso:  CC-2018-513


Fecha:  14 de septiembre de 2020


Tribunal de Apelaciones:

    Región Judicial de San Juan y Caguas, Panel IV


Abogado de la parte peticionaria:

    Lcdo. Manuel Fernández Mejías


Abogados de la parte recurrida:

    Lcdo. Jorge R. Ruiz Pabón
    Lcdo. Carlos M. Aquino Ramos
    Lcdo. Fernando J. Fornaris Fernández
    Lcda. Victoria D. Pierce King


Negociado de Energía Eléctrica de Puerto Rico:

    Lcda. Sylvia B. Ugarte Araujo


Materia:  Derecho constitucional – Derecho de acceso a la información pública. La Autoridad de Energía Eléctrica está obligada a publicar las resoluciones emitidas por su Junta de Gobierno, previo a la enmienda introducida por la Ley de Política Pública Energética de Puerto Rico, Ley Núm. 17-2019, que lo ordenó con carácter prospectivo.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Engineering Services International, Inc.<br><br>Peticionaria<br><br>v.<br><br>Autoridad de Energía Eléctrica de Puerto Rico<br><br>Recurrida<br><br>CEPR de Energía de Puerto Rico<br><br>Agencia recurrida | CC-2018-0513 | *Certiorari* |
|---|---|---|

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 14 de septiembre 2020.

Nos corresponde atender una controversia relacionada con el acceso a la información generada por una de las corporaciones públicas principales de Puerto Rico. Específicamente, debemos resolver si la Autoridad de Energía Eléctrica está obligada a publicar las resoluciones emitidas por su Junta de Gobierno, previo a una enmienda a la ley orgánica con carácter prospectivo que así lo ordena. En virtud del derecho de acceso a la información pública y tras un estudio íntegro del derecho aplicable, resolvemos en la afirmativa. Con ello en mente, veamos el trasfondo fáctico y procesal de la controversia ante nos.

**I.**

El 10 de mayo de 2017, la corporación Engineering Services International, Inc. (ESI o peticionaria) presentó

una querella ante la Comisión de Energía de Puerto Rico (CEPR) en contra de la Autoridad de Energía Eléctrica de Puerto Rico (AEE o recurrida). En la misma, ESI alegó que la AEE no había publicado ciertas actas y minutas correspondientes a reuniones de la Junta de Gobierno de la AEE. ESI arguyó que éstas eran documentos públicos que debían ser divulgadas conforme a la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, infra. Debido a lo anterior, ESI solicitó que la CEPR ordenara la publicación de las actas y minutas en controversia.

Por su parte, la AEE solicitó la desestimación de la querella presentada por diversos fundamentos. En torno a lo relevante a la controversia ante nos, la AEE indicó que ya había publicado la información solicitada por ESI. A raíz de ello, la CEPR ordenó a ESI que mostrara causa por la cual la querella presentada no debía ser desestimada.

En cumplimiento con dicha orden, ESI compareció ante la CEPR y sostuvo que, a pesar de que la AEE publicó las actas y minutas solicitadas, su reclamo no debía ser desestimado. Esto, pues ESI enmendó la querella a fines de aclarar que la AEE tenía la obligación de divulgar tanto las actas y minutas de las reuniones, como las **resoluciones** finales emitidas por su Junta de Gobierno. ESI indicó que las actas, las minutas y las resoluciones de la Junta de Gobierno de la AEE eran documentos públicos, por lo que la AEE estaba obligada a publicarlas. La peticionaria señaló que, previo al año 2014, la AEE publicaba esporádicamente

las resoluciones emitidas e, incluso, incluyó una imagen de la página de internet en la cual se divulgaban.[1] ESI alegó que, luego del año 2015, la recurrida cesó de publicar las resoluciones. De igual forma, la peticionaria expuso que en ese momento no tenía acceso a resolución alguna debido a que dicha página de internet fue eliminada. En consecuencia, ESI solicitó la publicación de las resoluciones emitidas por la Junta de Gobierno de la AEE desde el año 2015 al año 2017.

Mediante una moción en oposición, la AEE alegó que la solicitud de ESI constituía una "expedición de pesca", pues no expuso cúal era el propósito o la necesidad de obtener dicha información. Asimismo, arguyó que la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, infra, disponía que la AEE debía publicar las actas y minutas de las reuniones de su Junta de Gobierno, más no las resoluciones.

En respuesta, ESI replicó que su derecho de acceder a información pública no estaba sujeto a que ésta fundamentara su solicitud, pues se trataba del "derecho del pueblo de Puerto Rico a conocer la verdad de lo que ocurre en la AEE".[2] A tales efectos, enfatizó que en este contexto "no cabe hablar de una 'expedición de pesca'".[3]

---

[1]Apéndice de certiorari, Moción en cumplimiento de orden y sobre enmienda a querella, págs. 63-65.

[2]Íd., Réplica a moción de querellante, pág.77.

[3]Íd.

Además, ESI sostuvo que la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, infra, establecía una política pública de transparencia y acceso a la información. Conforme a lo anterior, la peticionaria señaló que el hecho de que el referido estatuto hiciera referencia a la publicación de actas y minutas no presupone la confidencialidad automática de las resoluciones de la Junta de Gobierno de la AEE. En esa línea, la peticionaria alegó que era a la AEE a quien correspondía el peso de la prueba de fundamentar por qué la información solicitada era confidencial.

Por otro lado, la AEE presentó una dúplica en la cual reiteró los argumentos expuestos. A esos fines, insistió que ESI no tenía fundamento en ley para acceder a dicha información y que, para ello, debía especificar el propósito de su solicitud.

Ante este cuadro, la CEPR determinó que las resoluciones de la Junta de Gobierno de la AEE "son los documentos que contienen las decisiones formales, así como las acciones tomadas por la corporación pública".[4] La CEPR razonó que "[e]stos son los documentos más relevantes para entender y conocer la forma en que opera la Autoridad".[5] Por tanto, concluyó que, aunque la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, infra, solo requería la publicación de actas y minutas, el estatuto establecía una

---

[4] Íd., Resolución final, pág. 30.

[5] Íd.

política pública firme a favor de la transparencia y de la participación ciudadana. A raíz de ello, resolvió que "el principio de rendición de cuentas y transparencia establecido en la Ley 57-2014, la cual rige el mercado energético del país, hace fundamental la publicación y el acceso fácil por parte de los ciudadanos de las Resoluciones de la Junta de Gobierno de la Autoridad".[6] En consecuencia, la CEPR ordenó a la AEE a divulgar las resoluciones de su Junta de Gobierno en un término de treinta días, mediante un mecanismo electrónico de fácil acceso y libre de costo para el público.

Inconforme, la AEE presentó una <u>Moción de Reconsideración</u> ante la CEPR. La CEPR no adjudicó la solicitud, por lo que la AEE compareció oportunamente ante el Tribunal de Apelaciones mediante un recurso de revisión judicial. En el mismo, la recurrida alegó, entre varios planteamientos, que la ley aplicable no exigía la publicación de las resoluciones de la Junta de Gobierno de la AEE. Por su parte, ESI se opuso al recurso y reiteró los argumentos presentados ante el foro administrativo.

Trabada así la controversia, el foro apelativo intermedio revocó la decisión del CEPR y resolvió que la <u>Ley de la Autoridad de Energía Eléctrica de Puerto Rico</u>, <u>infra</u>, no obligaba a la AEE a divulgar las resoluciones de su Junta de Gobierno. Esto, pues interpretó que el estatuto solo requería la publicación de las actas y minutas.

---

[6]Íd., págs. 30-31.

Insatisfecha con la determinación del Tribunal de Apelaciones, ESI comparece ante nos mediante un recurso de certiorari. En síntesis, la peticionaria alega que, tanto del texto de la ley como de su historial legislativo, se desprende una intención legislativa clara y firme a favor de la transparencia y de la participación ciudadana. A esos efectos, arguye que dichos principios solo se pueden cumplir si el público conoce las decisiones tomadas por la AEE. En esa dirección, señala que una lectura integral del estatuto resulta en la inevitable conclusión de que la AEE está obligada a divulgar las decisiones emitidas por su Junta de Gobierno, al igual que las minutas y las actas de sus reuniones.

Por otra parte, la AEE se opone al recurso y reitera que su ley orgánica únicamente exige la publicación de actas y minutas. Asimismo, expresa que la reproducción de las resoluciones solicitadas sería oneroso para la AEE. Esto, pues arguye que de cada reunión de la Junta de Gobierno de la AEE pueden surgir varias resoluciones y que, previo a su publicación, la AEE tendría que editar las mismas para omitir información confidencial. Conforme con lo anterior, alega que la orden de la CEPR de reproducir esa información en treinta días es insostenible.

El 26 de octubre de 2018, el Pleno de este Tribunal acordó expedir el recurso ante nuestra consideración. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

Como es conocido, los ciudadanos y ciudadanas de Puerto Rico gozan de un derecho de acceso a la información pública, el cual garantiza que toda persona pueda examinar el contenido de los expedientes, informes y documentos recopilados por el Estado en sus gestiones gubernamentales. Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 175 (2000). El derecho de acceso a la información pública es principio inherente de toda sociedad democrática, por lo que hemos sido consecuentes al reconocer su carácter fundamental y constitucional. Trans Ad de P.R. v. Junta de Subastas, 174 DPR 56, 67 (2008); Ortiz v. Dir. Adm. de los Tribunales, supra; Soto v. Srio de Justicia, 112 DPR 477, 503 (1982). Esto, en virtud de que su ejercicio está estrechamente vinculado con los derechos de libertad de expresión, prensa y asociación. Art. II, Sec. 4, Const. ELA, LPRA, Tomo 1; Soto v. Srio de Justicia, supra, págs. 485-486. Cónsono con dicho mandato constitucional, nuestro ordenamiento ha reconocido estatutariamente que "[t]odo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley". Artículo 409 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 1781.

El derecho de acceso a la información pública se cimienta en la premisa de que toda persona tiene derecho a

saber y a conocer de los asuntos gubernamentales. E. Rivera Ramos, _La libertad de información: Necesidad de su reglamentación en Puerto Rico_, 44 Rev. Jur. UPR 67, 67-68 (1975). En una sociedad democrática, "resulta imperativo reconocer al ciudadano común 'el derecho legal de examinar e investigar cómo se conducen sus asuntos'". _Ortiz v. Dir. Adm. de los Tribunales_, supra (citando a _Soto v. Srio de Justicia_, supra, pág. 485). De este modo, el conocimiento sobre las gestiones públicas facilita la libre discusión de los asuntos de gobierno y el ejercicio pleno de la libertad de expresión. _Colón Cabrera v. Caribbean Petroleum_, 170 DPR 582, 590 (2007).

A su vez, el derecho del acceso a la información pública es un catalizador indispensable de la participación ciudadana. _Trans Ad de P.R. v. Junta de Subastas_, supra, pág. 70. El flujo de información pública genera discusiones informadas y fortalece la facultad de la ciudadanía de participar efectiva e inteligentemente en los asuntos gubernamentales.

Asimismo, el acceso a la información es una herramienta fiscalizadora esencial, pues permite que las personas emitan juicios informados sobre los actos de su gobierno. _Colón Cabrera v. Caribbean Petroleum_, supra. Nuestros principios democráticos "garantizan el derecho del pueblo a pasar un juicio fiscalizador sobre todas las acciones y determinaciones del Gobierno". _Trans Ad de P.R. v. Junta de Subastas_, supra, pág. 67. De lo contrario,

"[p]ermitir que el gobierno maneje los asuntos públicos bajo el manto de la secretividad es invitar a la arbitariedad, la mala administración, la indiferencia gubernamental, la irresponsabilidad pública y la corrupción". Rivera Ramos, op. cit., pág. 69. Por tal razón, "[h]oy día la secretividad en los asuntos públicos es excepción y no norma". Santiago v. Bobb y El Mundo, Inc., 117 DPR 153, 159 (1986). De este modo, el derecho de acceso a la información pública promueve y facilita la transparencia gubernamental.

Ahora bien, el derecho de acceso a la información pública se activa una vez la información solicitada por una persona es, en efecto, pública. A esos fines, el Artículo 1(b) de la Ley de Administración de Documentos Públicos de Puerto Rico, Ley Núm. 5 de 8 de diciembre de 1955, según enmendada, 3 LPRA sec. 1001, provee que se considerará documento público lo siguiente:

> . . . [T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.

Una vez un documento es catalogado como público, todo ciudadano y ciudadana, por el hecho de serlo, tiene legitimación activa para solicitar y acceder a información pública. Colón Cabrera v. Caribbean Petroleum, supra, pág.

589; Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 176. Ello, pues "[e]n la medida en que todo ciudadano tiene el derecho a inspeccionar cualquier documento público, el acto de denegar el acceso, por sí mismo, causa al solicitante un daño claro, palpable y real". Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 177.

Como corolario de lo anterior, el derecho de acceso a la información pública exige necesariamente que el Estado divulgue información pública en miras de "expeditar el camino de los ciudadanos interesados -inclusive críticos y adversarios- en averiguar la verdad y no sembrar el camino de obstáculos". Soto v. Srio de Justicia, supra, pág. 504. Por tanto, el derecho de acceso a la información se materializa en la medida que el Estado divulga y publica la información relacionada con sus gestiones gubernamentales.

Sin embargo, este Tribunal ha reconocido ciertos supuestos en los que el Estado puede alegar la confidencialidad de información pública. A esos efectos, hemos resuelto que un reclamo de confidencialidad por parte del Estado puede prosperar a modo de excepción cuando éste pruebe de forma **precisa e inequívoca** cualquiera de las siguientes: (1) una ley así lo declara; (2) la comunicación está protegida por algún privilegio evidenciario; (3) la divulgación de la información puede lesionar derechos fundamentales de terceros; (4) se trate de un confidente, según la Regla 515 de Evidencia de 2009, 32 LPRA Ap. VI, o (5) sea información oficial conforme a la Regla 514 de

Evidencia de 2009, 32 LPRA Ap. VI. Santiago v. Bobb y El Mundo, Inc., supra.

Tal como se ha reconocido por este Tribunal sin ambages, las restricciones impuestas por el Estado para negar el acceso a la información deben satisfacer los criterios de un **escrutinio estricto**. Véase, Bhatia Gautier v. Gobernador, 199 DPR 59, 82 (2017); Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 178; Colón Cabrera v. Caribbean Petroleum, supra, pág. 593. Por tanto, al invocar alguna de las excepciones mencionadas, el Estado no puede negar caprichosa o arbitrariamente el acceso a la información pública. Colón Cabrera v. Caribbean Petroleum, supra, pág. 590. Al contrario, al alegar la confidencialidad de algún documento público, "el Estado tiene la carga de probar que satisface cualquiera de las excepciones antes enumeradas". Íd., pág. 591. En consecuencia, toda negativa del Estado a divulgar asuntos públicos debe estar debidamente fundamentada y justificada. En este contexto, "[n]o bastan meras generalizaciones". Santiago v. Bobb y El Mundo, Inc., supra.

Ante controversias de esta naturaleza, los tribunales deben ser "cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado". Santiago v. Bobb y El Mundo, Inc., supra. Así, "[a]nte la hermética resistencia del Estado a viabilizar el derecho de acceso a la información, corresponde a los tribunales franquear el camino". Soto v. Srio de Justicia, supra, pág. 504. De lo

contrario, "retrocederíamos los pasos avanzados en favor del derecho de acceso a la información gubernamental y a la igualdad -en el ámbito contencioso- entre el Estado y los ciudadanos particulares". Santiago v. Bobb y El Mundo, Inc., supra, pág. 160.

**B.**

Con tales principios como norte, procedemos a exponer el desarrollo del marco estatutario que rige la AEE. La AEE es una corporación pública dirigida por un ente rector, su Junta de Gobierno, la cual ejerce la política general y la dirección estratégica del ente. Ley de la Autoridad de Energía Eléctrica de Puerto Rico, Ley Núm. 83 de 2 de mayo de 1941, 22 LPRA secs. 193-194. La Junta de Gobierno de la AEE tiene, entre varias responsabilidades, el deber de "desarrollar y mantener un marco de rendición de cuentas claro y transparente", de establecer "un modelo de gobernanza participativo y dinámico" y de implementar medidas operacionales. Íd., 22 LPRA sec. 194.

Como corolario de lo anterior, la Junta de Gobierno de la AEE emite una serie de documentos luego de la celebración de reuniones ordinarias y extraordinarias, en las que se ejercen las labores antes esbozadas. Entre estos documentos, se encuentran agendas, itinerarios, actas, minutas y resoluciones.

Ahora bien, la AEE se rige mayormente por lo dispuesto en su ley orgánica, la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, supra, 22 LPRA secs. 191-240a.

Como es de esperarse, el referido estatuto ha sido enmendado en numerosas ocasiones para una variedad de propósitos. En lo pertinente a la controversia ante nuestra consideración, la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, supra, fue enmendada por la Ley Núm. 29-2013, 2013 LPR 350-360 (Parte 1). Entre varios asuntos, la Ley Núm. 29-2013 tuvo como objetivo garantizar que la AEE opere "de forma eficiente y **transparente**". (Énfasis suplido). Íd., 2013 LPR 350.

Para lograr esa encomienda, la Asamblea Legislativa determinó que era necesario que la ciudadanía conociera sobre los acontecimientos y las decisiones tomadas en las reuniones de la Junta de Gobierno de la AEE. A esos fines, la Ley Núm. 29-2013, supra, dispuso lo siguiente:

> Las reuniones ordinarias, extraordinarias y de comités de la Junta [de Gobierno] serán privadas. No obstante, **se publicarán las agendas y actas de los trabajos de las reuniones ordinarias y extraordinarias de la Junta** en el portal de Internet de la Autoridad, una vez sean aprobadas por la Junta en una reunión subsiguiente. (Énfasis suplido). Íd., 2013 LPR 355.

Así, la AEE estaría obligada a divulgar "lo sucedido, tratado o acordado" por la Junta de Gobierno. Íd., 2013 LPR 356. De este modo, se fortaleció el derecho de la ciudadanía puertorriqueña de conocer las gestiones de la AEE mediante una medida que no resultaba ser onerosa para el ente gubernamental.

Sin embargo, la publicación de la referida documentación estaba sujeta a que la Junta de Gobierno de

la AEE suprimiera cierta información confidencial. Ello, pues la Asamblea Legislativa previó que unos elementos y asuntos debían ser omitidos de los documentos que surgieran en virtud de estas reuniones. A esos fines, la Ley Núm. 29-2013, _supra_, especificó que, previo a la publicación de estos documentos, se podían suprimir las siguientes materias:

> (i) [T]oda información que sea privilegiada a tenor con lo dispuesto en las Reglas de Evidencia, (ii) toda información relacionada con la negociación de convenios colectivos, (iii) las ideas discutidas en relación con la negociación de potenciales contratos de la Autoridad, (iv) toda información sobre estrategias en asuntos litigiosos de la Autoridad, (v) toda información sobre investigaciones internas de la Autoridad mientras éstas estén en curso, (vi) la propiedad intelectual de terceras personas, y (vii) los secretos de negocios de terceras personas. Íd., 2013 LPR 355.

Como puede apreciarse, el mismo estatuto identificó la información que, según el criterio de la Asamblea Legislativa, no debía ser divulgada.

Cónsono con ello, del historial legislativo del estatuto se desprende una intención clara de la Asamblea Legislativa de promover mayor transparencia en las operaciones de la AEE. Particularmente, la Comisión de Gobierno, Eficiencia Gubernamental e Innovación Económica del Senado de Puerto Rico explicó que "es necesario proveer mayor información al público" y "añadirle un mayor nivel de apertura a los datos e información que estará disponible al escrutinio público". _Informe recomendando la aprobación del P. de la C. 715, con enmiendas_, Com. de Gobierno,

Eficiencia Gubernamental e Innovación Económica, 18 de abril de 2013, 1ra Ses. Ord., 17ma Asam. Leg., pág. 10. Se estimó, acertadamente, que "[e]ste requisito de publicidad no resultará en una erogación significativa de fondos de la Autoridad, pero será un paso significativo para mantener al público informado de los trabajos y las decisiones de la Junta y de la utilización de los recursos de la AEE". Íd.

Posteriormente, la Ley de Transformación y Alivio Energético, Ley Núm. 57-2014, 22 LPRA secs. 1051-1056, enmendó nuevamente la ley orgánica de la AEE, en miras de fortalecer aún más el acceso a la información pública de la entidad. Surge de la exposición de motivos del estatuto que el mismo se aprobó con la intención de transformar a la AEE mediante una serie de enmiendas, incluyendo la implementación de "mecanismos para promover una mayor participación ciudadana y acceso de información". Ley de Transformación y Alivio Energético, Ley Núm. 57-2014, 2014 LPR 305.

Dicho esfuerzo se materializó con la creación e implementación de una política pública a favor de "promover[] la transparencia y la participación ciudadana en **todos** los procesos relacionados al servicio de energía en Puerto Rico". (Énfasis suplido). Ley de Transformación y Alivio Energético, supra, 22 LPRA sec. 1051. De igual modo, la legislación exige la implementación de una "variedad de mecanismos para permitir que los clientes de la Autoridad y de las compañías generadoras de energía certificadas en

Puerto Rico tengan espacios para expresar sus preocupaciones, dar sugerencias y ser incluidos en los procesos de toma de decisiones". Íd., 22 LPRA sec. 1051a. Conforme a esta política pública, el estatuto provee que:

> **[T]oda información**, datos, estadísticas, informes, planes, reportes y documentos **recibidos y/o divulgados** por cualquiera de los organismos que por la presente Ley se crean, por la Autoridad y por toda compañía de energía estarán sujetos a los siguientes principios:
> (1) La información debe estar **completa**, con excepción de aquella información que deba ser suprimida por ser privilegiada conforme a las Reglas de Evidencia adoptadas por la Rama Judicial de Puerto Rico;
> (2) la divulgación de la información debe ser **oportuna**;
> . . .
> (4) la información **no** debe estar sujeta a normas de confidencialidad más amplias de lo necesario;
> . . .
> (6) el público tendrá **acceso** a la información por medios electrónicos sin tener que registrarse o abrir una cuenta, y libre de costo;
> . . . (Énfasis suplido). Íd., 22 LPRA sec. 1051b.

Por tanto, la legislación contempla que toda documentación recibida o generada por la AEE es información pública que debe ser divulgada al público general.

Asimismo, el estatuto derogó las disposiciones anteriores que establecían la privacidad de las reuniones de la Junta de Gobierno de la AEE al proveer que "[l]as reuniones ordinarias y extraordinarias de la Junta deben ser **transmitidas** simultáneamente por Internet y **expuestas** posteriormente en el portal de Internet de la Autoridad".

(Énfasis suplido). <u>Ley de la Autoridad de Energía Eléctrica de Puerto Rico</u>, <u>supra</u>, 22 LPRA sec. 194.

De igual modo, la <u>Ley de Transformación y Alivio Energético</u>, <u>supra</u>, mantuvo la directriz de publicar "lo sucedido, tratado o acordado en la Junta" mediante la divulgación de los itinerarios, las agendas y las actas de las reuniones. <u>Ley de la Autoridad de Energía Eléctrica de Puerto Rico</u>, <u>supra</u>, 22 LPRA sec. 194. Similar a la enmienda anterior, la publicación de esa información está sujeta a que la Junta de Gobierno de la AEE omita cierta información confidencial contenida en tales documentos. A esos fines, el estatuto especifica que, previo a la publicación de estos documentos, se deben suprimir las siguientes materias:

> (i)[I]nformación que sea privilegiada a tenor con lo dispuesto en las Reglas de Evidencia de Puerto Rico; (ii) información relacionada con la negociación de convenios colectivos, con disputas laborales o con asuntos de personal, tales como nombramientos, evaluaciones, disciplina y despido; (iii) ideas en relación con la negociación de potenciales contratos de la Autoridad o con la determinación de resolver o rescindir contratos vigentes; (iv) información sobre estrategias en asuntos litigiosos de la Autoridad; (v) información sobre investigaciones internas de la Autoridad mientras éstas estén en curso; (vi) aspectos sobre la propiedad intelectual de terceras personas; (vii) secretos de negocios de terceras personas; (viii) asuntos que la Autoridad deba mantener en confidencia al amparo de algún acuerdo de confidencialidad; o (ix) asuntos de seguridad pública de la Autoridad, sus bienes o sus empleados, o relacionados a amenazas contra éstos. Íd.

Como puede apreciarse, la Asamblea Legislativa identificó de modo expreso y específico aquellos asuntos que entendió que no se debían divulgar al público.

De este modo, la Ley de Transformación y Alivio Energético, supra, enmendó el andamiaje aplicable a fines de concretizar el acceso a la información y a las operaciones de la AEE. A raíz de ello, "[d]esde e[l] proceso de revisión de tarifas hasta el de sus operaciones diarias, la AEE está sujeta a un **constante deber de informar al pueblo**". L. A. Avilés, La Comisión de Energía de Puerto Rico y la Autoridad de Energía Eléctrica: Hacia un modelo colaborativo de regulación tarifaria, 7 U. P.R. Bus. LJ 310, 329 (2016). Debido al "alto grado de transparencia que la ley quiere lograr", se ha interpretado que "todo ciudadano, al estar legitimado, puede obtener la información pertinente y necesaria para reclamar sus derechos al amparo de la ley o exigir su cumplimiento". Íd.

Al igual que el texto de la ley, el historial legislativo de la Ley de Transformación y Alivio Energético, supra, evidencia una firme intención legislativa de promover mayor transparencia en la AEE y de garantizar el acceso a su documentación pública. El referido estatuto fue el producto de varios proyectos de ambos cuerpos legislativos, los cuales tenían como propósito "aumentar y facilitar el acceso del público a información sobre el funcionamiento y operación de la Autoridad, dando mayor transparencia a los procesos".

Informe positivo sobre el Sustitutivo del Senado al P. del S. 837, P. del S. 838, P. del S. 839, P. del S. 840, P. del S. 841, P. del S. 842, P. del S. 843, P. del S. 881, P. del S. 882, y al Sustitutivo de la Cámara de Representantes al P. de la C. 1457 y P. de la C. 1618, 12 de mayo de 2014, 3ra Ses. Ord., 17ma Asam. Leg., en la pág. 3.

Cónsono con ello, uno de los objetivos principales de la medida fue "[l]ograr mayor transparencia y participación ciudadana en los procesos administrativos y operacionales de la Autoridad de Energía Eléctrica, reconociendo que son los ciudadanos de Puerto Rico los dueños de dicha corporación pública". Diario de Sesiones del Senado de Puerto Rico, 3ra Ses. Ord., 17ma Asam. Leg. (20 de marzo de 2014), pág. 14003. Así, "los principios de transparencia, colaboración y participación ciudadana se[rían] los parámetros de acción" de la AEE. Íd., pág. 14005.

Además, se entendió que "el país merece de su corporación pública saber lo que pasa allá adentro, no porque se haga bien o mal, sino porque es lo correcto que uno sepa cómo se hacen las cosas en esa corporación. Y esta reforma busca, empujar a la Autoridad, lleva a la Autoridad a ser más transparente con todos". Diario de Sesiones de la Cámara de Representantes de Puerto Rico, 3ra Ses. Ord., 17ma Asam. Leg. (13 de mayo de 2014), pág. 217. Similarmente, la medida se fundamentó en la premisa de que "[s]in la transparencia que requerimos no solamente de la Autoridad, sino de todo el Gobierno, no vamos a tener nunca

la confianza de la gente, y sin la confianza pudiéramos perder nuestro sistema democrático". Íd., pág. 265.

Finalmente, posterior a los hechos ante nuestra consideración, la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, supra, fue enmendada recientemente por la Ley de Política Pública Energética de Puerto Rico, Ley Núm. 17-2019, http://www.oslpr.org/2017-2020/leyes/pdf/ley-17-11-Abr-2019.pdf. Dicho estatuto mantiene las enmiendas incorporadas mediante la Ley de Transformación y Alivio Energético, supra. Entiéndase, permanece vigente la política pública a favor de la transparencia y de la participación ciudadana en la AEE, y se continúa exigiendo que la Junta de Gobierno publique las actas, itinerarios y minutas de sus reuniones.

No obstante, cónsono con la intención legislativa detrás de las enmiendas anteriores, se aclaró expresamente que la AEE debe mantener un portal de Internet con acceso gratuito que provea una variedad de documentos, entre ellos, "[c]opia de todos sus contratos y de las **resoluciones** de la Junta de Gobierno". (Énfasis suplido). Ley de Política Pública Energética de Puerto Rico, supra, pág. 45. Sin embargo, la vigencia de esta enmienda es con carácter prospectivo, según lo dispone expresamente el Art. 8.6 del estatuto. Íd., pág. 120. Ello, unido al reiterado patrón de objeciones de la AEE, nos conduce a un caso y controversia que requiere sopesar los reclamos de la peticionaria y del Estado conforme a Derecho.

## c.

Por último, precisa señalar los principios de hermenéutica legal aplicables a la controversia ante nuestra consideración. Como es conocido, en el ordenamiento jurídico de Puerto Rico rigen una serie de normas que guían nuestra función adjudicativa de interpretar los estatutos aprobados por la Asamblea Legislativa. A esos fines, es principio cardinal que toda ley se presume constitucional, pues se entiende que la Asamblea Legislativa actúa conforme a los mandatos y prohibiciones constitucionales. Acevedo Vilá v. Meléndez, 164 DPR 875, 884 (2005).

Asimismo, es conocido que "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14. Debido a lo anterior, los tribunales debemos acudir primeramente al texto de las leyes ante nuestra consideración. En esa encomienda, debemos estudiar íntegramente el estatuto al interpretar sus disposiciones en conjunto, mas no por secciones separadas. Const. José Carro v. Mun. Dorado, 186 DPR 113, 127 (2012). Por tal motivo, "estamos obligados a armonizar, en la medida de lo posible, todas las disposiciones de la ley, en aras de obtener un resultado más sensato, lógico y razonable". Rosado Molina v. ELA y otros, 195 DPR 581, 590 (2016).

Ahora bien, si al estudiar la totalidad de un estatuto surgen ambigüedades, dudas o lagunas, debemos interpretar

sus disposiciones conforme a la intención legislativa. Spyder Media, Inc. v. Mun. de San Juan, 194 DPR 547, 556 (2016). Esto, pues "la letra de la ley no debe seguirse ciegamente cuando ello iría en detrimento de su espíritu y su fin". Rivera Fernández v. Mun. Carolina, 190 DPR 196, 202 (2014). En esa dirección, este Tribunal ha reiterado que la Rama Judicial tiene la responsabilidad de auscultar el propósito legislativo de las leyes cuando ocurren las siguientes circunstancias:

> Los tribunales estamos autorizados a **interpretar** las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere. (Énfasis en el original). Consejo Titulares v. Gómez Estremera et al., 184 DPR 407, 428-429 (2012); Pueblo v. Vega Vélez, 125 DPR 203, 214 (1990).

En estas circunstancias, "[s]olo hay una regla de interpretación que es **absolutamente invariable** y ésta es que **debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo**". (Énfasis en el original). R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. 1, Cap. 30, pág. 242. Por tanto, nuestro norte debe ser auscultar y precisar efectivamente la voluntad de la Asamblea Legislativa.

Para ello, los tribunales podemos recurrir a fuentes extrínsecas al texto de la ley, como el historial legislativo, los informes de las comisiones y los debates

legislativos. <u>Cordero Vargas v. Pérez Pérez</u>, 198 DPR 848, 864 (2017). En este ejercicio, "al interpretar y aplicar un estatuto hay que hacerlo teniendo presente el propósito social que lo inspiró". <u>Departamento Hacienda v. Telefónica</u>, 164 DPR 195, 204 (2005). "Con ello se intenta evitar que al interpretar un estatuto se obtengan conclusiones o interpretaciones que carezcan de lógica jurídica o sentido de justicia". Íd., pág. 940.

Asimismo, es norma de hermenéutica que "[l]as leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro". Art. 18 del Código Civil de Puerto Rico, 31 LPRA sec. 18. Conforme a lo anterior, al enfrentarnos a diversos estatutos relacionados entre sí, debemos interpretarlos "como un todo armónico, leyéndolas en conjunto y no interpretando aisladamente sus disposiciones". R.E. Bernier y J.A. Cuevas Segarra, <u>op. cit.</u>, Cap. 73, pág. 481. En estas circunstancias, se presume que las leyes que regulan las mismas materias "reflejan la política pública propulsada por la Asamblea Legislativa y que sus disposiciones deben ser interpretadas refiriéndose las unas a las otras como un todo". <u>Cardona v. Depto. Recreación y Deportes</u>, 129 DPR 557, 568-569 (1991).

Examinado el derecho aplicable, procedemos a resolver la controversia ante nuestra consideración.

**III.**

Como expusimos anteriormente, ESI solicita que la AEE publique las resoluciones acordadas en las reuniones de la Junta de Gobierno de la AEE, así como divulgar las correspondientes actas y minutas. La peticionaria sostiene que las resoluciones son documentos públicos y que, conforme a la política pública promovedora del acceso a la información y de transparencia de la AEE, éstas deben ser divulgadas al público.

Por su parte, la AEE arguyó ante los foros primarios que no está obligada a divulgar las resoluciones de su Junta de Gobierno debido a que ESI no fundamentó ni justificó la necesidad de acceder a los referidos documentos. Asimismo, indica que la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, supra, solo le exige la publicación de actas y minutas. Por último, insistió que resultaría muy oneroso reproducir las resoluciones correspondientes a aproximadamente cuarenta y dos reuniones celebradas entre los años 2015 y 2017.

De entrada, procede determinar si las resoluciones solicitadas por ESI constituyen información pública. Como explicamos anteriormente, se considera un documento público aquel que se origine, conserve o reciba en cualquier dependencia de Estado en relación con el manejo de asuntos públicos. Ley de Administración de Documentos Públicos de Puerto Rico, supra, 3 LPRA sec. 1001(b).

La Junta de Gobierno maneja las gestiones y operaciones de la AEE, la cual es una corporación pública. Por su parte, las resoluciones en controversia son los documentos que evidencian las "decisiones formales, así como las acciones tomadas" por la Junta de Gobierno en sus reuniones.[7] En consecuencia, las resoluciones son documentos generados en el manejo de asuntos públicos, por lo que constituyen información pública.

Una vez concluido que la información solicitada por ESI es documentación pública, se activa el derecho de todo ciudadano y ciudadana de acceder a la misma. Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 176. Como ha expresado este Tribunal anteriormente, toda persona, por el hecho de serlo, tiene derecho a acceder a la información pública. Íd. Además, del andamiaje estatutario antes descrito se desprende que la AEE está obligada a divulgar la documentación relacionada con sus gestiones y operaciones, indistintamente de la razón por la cual alguna persona solicite la misma. Por tanto, ESI no tiene el deber de explicar las razones por las cuales interesa acceder a los documentos públicos de la AEE.

Aclarados esos asuntos de umbral, procedemos a escudriñar la negación de la AEE a divulgar los documentos públicos en controversia. Como explicamos anteriormente, el Estado tiene el peso de la prueba para demostrar que la confidencialidad de un documento público se justifica

---

[7]Apéndice de certiorari, Resolución final, pág. 30.

mediante un interés apremiante. En este contexto, no bastan las meras generalizaciones ni los fundamentos arbitrarios. Santiago v. Bobb y El Mundo, Inc., supra. Ante tal realidad jurídica, la AEE se limita a alegar que estatutariamente no está obligada a publicar las resoluciones de su Junta de Gobierno. Pasemos, pues, a interpretar la totalidad de las disposiciones de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, supra, para auscultar si ello es así.

Ciertamente, al momento de los hechos, el referido estatuto proveía que la Junta de Gobierno de la AEE debía publicar los itinerarios, las agendas y las actas de sus reuniones, mas no hacía referencia a las resoluciones. Íd., 22 LPRA sec. 194. Sin embargo, esta lectura aislada no dispone de la controversia ante nos, pues la mera referencia a itinerarios, agendas y actas no conlleva la confidencialidad automática de otros documentos.

Al analizar el estatuto en conjunto, surge que desde el año 2013, la Asamblea Legislativa ha ordenado la publicación de "lo sucedido, tratado o acordado" en las reuniones de la Junta de Gobierno mediante actas. Ley de la Autoridad de Energía Eléctrica de Puerto Rico, supra, 22 LPRA sec. 194. Si las resoluciones también son, tal como reconoce la propia AEE, documentos que "recogen lo acordado" en sus reuniones, prohibir su publicación resulta contradictorio al texto de la propia ley.[8] Es decir, es

---

[8]Oposición a petición de certiorari, pág. 11.

irrazonable concluir que la Asamblea Legislativa interesa que los ciudadanos y ciudadanas de Puerto Rico conozcan "lo sucedido, tratado o acordado" por la Junta de Gobierno de la AEE, mas no las resoluciones que evidencian "las decisiones formales, así como las acciones tomadas por la corporación pública".[9]

Asimismo, un análisis de las disposiciones de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, supra, a la luz de la política pública establecida por la Ley de Transformación y Alivio Energético, supra, conduce nuevamente a la inevitable conclusión de que se vislumbró el acceso público a las resoluciones solicitadas. Como expusimos anteriormente, la Ley de Transformación y Alivio Energético, supra, implementó expresamente una política pública a favor de la transparencia de las gestiones de la AEE. Íd., 22 LPRA sec. 1051. A raíz de ello, fortaleció el acceso a la información de la AEE al disponer que toda información recibida y creada por la AEE debe ser divulgada oportunamente, de forma completa y mediante un portal electrónico. Íd., 22 LPRA sec. 1051b. Asimismo, reiteró que la información de la AEE no debe estar sujeta a normas de confidencialidad más amplias de lo necesario.

Ante este cuadro, prohibir la publicación de las resoluciones solicitadas frustraría significativamente la política pública plasmada en la Ley de Transformación y Alivio Energético, supra. De igual modo, contravendría el

---

[9]Apéndice de certiorari, Resolución final, pág. 30.

texto expreso de la ley, pues impediría la publicación oportuna y completa de un documento público. Como agravante, estaría sujetando cientos de documentos a una norma de confidencialidad automática, sin un fundamento jurídico válido.

Por otra parte, la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, supra, señala clara y expresamente cuales son las materias confidenciales que pueden ser suprimidas de los documentos que emanen de estas reuniones. Íd., 22 LPRA sec. 194. Sin pasar juicio sobre la validez de estos asuntos alegadamente confidenciales, se debe tener presente que la Asamblea Legislativa especificó previamente los temas y las materias que no debían ser divulgadas al público. Ninguna concierne la posible confidencialidad de las resoluciones de la Junta de Gobierno.

Ante ello, la AEE se limita a alegar que la publicación de las resoluciones sería oneroso, pues tendrían que suprimir las materias confidenciales especificadas en el estatuto. Esta contención no nos convence, pues este ejercicio se realiza con los demás documentos publicados por la Junta de Gobierno, en los que la AEE edita los documentos para omitir aquella información que la Asamblea Legislativa entendió confidencial previo a su publicación. Además, la alegada onerosidad de reproducir documentación no es fundamento suficiente para coartar el derecho de acceso a la información pública y los principios

de transparencia y participación ciudadana que rigen la AEE.

En consecuencia, un análisis integral del marco estatutario aplicable evidencia que la AEE está obligada a divulgar las resoluciones de su Junta de Gobierno. Por tanto, la AEE no fundamentó válidamente su reclamo de confidencialidad, ni mucho menos alegó un interés apremiante para ello. Debido a lo anterior, procede ordenar la publicación de las resoluciones de la Junta de Gobierno de la AEE. Nuestro ordenamiento democrático y la firme política pública a favor de la transparencia y el acceso a las gestiones gubernamentales así lo exigen.

**IV.**

Por los fundamentos antes expuestos, resolvemos que la AEE deberá publicar las resoluciones correspondientes a las reuniones de su Junta de Gobierno celebradas desde el año 2015 al 2017, en un término de **tres meses** contado a partir de la notificación de esta Opinión. En virtud de ello, revocamos la determinación del Tribunal de Apelaciones y modificamos parcialmente el dictamen de la Comisión de Energía de Puerto Rico, a fin de ampliar el término concedido originalmente.

Se dictará sentencia de conformidad.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Engineering Services International, Inc.<br><br>Peticionaria<br><br>v.<br><br>Autoridad de Energía Eléctrica de Puerto Rico<br><br>Recurrida<br><br>CEPR de Energía de Puerto Rico<br><br>Agencia recurrida | CC-2018-0513 | *Certiorari* |

SENTENCIA

San Juan, Puerto Rico, a 14 de septiembre 2020.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de le presente Sentencia, se resuelve que la AEE deberá publicar las resoluciones correspondientes a las reuniones de su Junta de Gobierno celebradas desde el año 2015 al 2017, en un término de **tres meses** contado a partir de la notificación de esta Opinión. En virtud de ello, se revoca la determinación del Tribunal de Apelaciones y se modifica parcialmente el dictamen de la Comisión de Energía de Puerto Rico, a fin de ampliar el término concedido originalmente.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Rivera García concurren sin opinión escrita. El Juez Asociado señor Feliberti Cintrón está inhibido.

María I. Colón Falcón
Secretaria del Tribunal Supremo, Interina